WILLIAM HURLE'S CASE.

Suffolk.    January 22, 1914. — February 28, 1914.

Present: RUGG, C. J., LORING, SHELDON, DE COURCY, & CROSBY, JJ.

*Workmen's Compensation Act.    Words,* "Personal Injury," "Injury."

The loss of sight by a workman employed in tending furnaces for producing gas
    by the burning of coal, which resulted from an acute attack of optic neuritis
    induced by poisonous coal tar gases that the workman was obliged to inhale
    when in the necessary course of his employment he removed the covers from
    holes in the tops of the furnaces about seventy times a day in order to ascertain
    the condition of the fires, is a "personal injury" arising out of and in the course
    of his employment within the meaning of St. 1911, c. 751, Part II, § 1, entit-
    ling him to compensation under the act, there being nothing in the act requiring
    that the injuries covered by it should be incurred by accident.

RUGG, C. J.  This is a case under the workmen's compensation
act.  The facts as found by the Industrial Accident Board are
that the employee is totally incapacitated for work by personal
injury which arose out of and in the course of his employment,
and which caused total loss of vision in both eyes.  It resulted
from an acute attack of optic neuritis induced by poisonous coal
tar gases.  His work was about furnaces for producing gas by
the burning of coal, in the top of which were several holes through
which after opening a cover he could watch the fire.  It was his
duty to see that the furnaces were supplied with coal and burn-
ing evenly, and to prevent incandescent spots caused by the
burning by forced draft.  It was necessary for him to open one
or another of these holes about seventy times a day, and whenever
these holes were opened poisonous gases were given forth.  The
inhalation of these caused his blindness.

The question to be decided is whether this was a "personal
injury arising out of and in the course of his employment" within
the meaning of those words in St. 1911, c. 751, Part II, § 1.  Un-
questionably it arose out of and in the course of his employment.
The only point of difficulty is whether it is a "personal injury."

The words "personal injury" have been given in many connec-
tions a comprehensive definition.  They are broad enough to in-

clude the husband's right to recover for damage sustained by bodily harm to his wife, the alienation of a husband's affections, the seduction of one's daughter and other kindred tortious acts. *Mulvey* v. *Boston*, 197 Mass. 178, and cases there cited. *Riddle* v. *MacFadden*, 201 N. Y. 215. *New York, Philadelphia & Norfolk Railroad* v. *Waldron*, 116 Md. 441. *Jefferson Fertilizer Co.* v. *Rich*, 180 Ala. 000. *McDonald* v. *Brown*, 23 R. I. 546. *Tomlin* v. *Hildreth*, 36 Vroom, 438, 440, 445. *Sharkey* v. *Skilton*, 83 Conn. 503, 510. They are not confined to the instances where the wrong can be described technically as trespass to the person *vi et armis*. The statement in *Commonwealth* v. *Mosby*, 163 Mass. 291, 294, that a "threat to injure the person of another naturally means a threat to use actual physical force," is not at variance with this idea. There were special reasons why the word "injury" was given a constricted meaning in 28 Opinions of the Attorneys General of the United States, 254. It has been interpreted broadly in policies of accident insurance. *Freeman* v. *Mercantile Mutual Accident Association*, 156 Mass. 351.

At common law the incurring of a disease or harm to health is such a personal wrong as to warrant a recovery if the other elements of liability for tort are present. *Hunt* v. *Lowell Gas Light Co.* 8 Allen, 169. *Allen* v. *Boston*, 159 Mass. 324. *Larson* v. *Boston Elevated Railway*, 212 Mass. 262, 267. *Deisenrieter* v. *Kraus-Merkel Malting Co.* 92 Wis. 164. *Wagner* v. *H. W. Jayne Chemical Co.* 147 Penn. St. 475. See also *Gossett* v. *Southern Railway*, 115 Tenn. 376. Damages of this sort have been held not recoverable under the mill acts, although an independent action would lie if a nuisance were created. *Eames* v. *New England Worsted Co.* 11 Met. 570. *Fuller* v. *Chicopee Manuf. Co.* 16 Gray, 46. See also *Wellington* v. *Boston & Maine Railroad*, 158 Mass. 185, 189. The preponderance in recent years of actions grounded upon some physical violence has tended to emphasize the aspect of injury which depends upon visual contact or direct lesion. But that is by no means the exclusive signification of the word either in common speech or in legal use.

The English workmen's compensation act affords compensation only where the workman receives "personal injury by accident." It adds to the personal injury alone required by our act the element of accident. Yet it has been held frequently that disease

induced by accidental means was ground for recovery; as, for example, a rupture resulting from over exertion; *Fenton* v. *Thorley & Co., Ltd.,* [1903] A. C. 443; infection of anthrax from a bacillus from wool which was being sorted, *Brintons, Ltd.,* v. *Turvey,* [1905] A. C. 230; heat from a furnace, *Ismay, Imrie & Co.* v. *Williamson,* [1908] A. C. 437; sunstroke, *Morgan* v. *S. S. Zenaida,* 25 T. L. R. 446; *S. C.* 2 B. W. C. C. 19; pneumonia, induced by inhalation of gas, *Kelly* v. *Auchenlea Coal Co., Ltd.,* [1911] 48 Sc. L. R. 768; *S. C.* 4 B. W. C. C. 417. See also *Brown* v. *George Kent, Ltd.,* [1913] 3 K. B. 624, and *Alloa Coal Co., Ltd.,* v. *Drylie,* 6 B. W. C. C. 398; *S. C.* 50 Sc. L. R. 350. We lay these cases on one side, however, because it is plain from the Third Schedule of St. 6 Ed. VII, c. 58, that certain occupational diseases were intended to be included within the English act.

*H. P. Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223, goes far toward deciding the case at bar. That was an action by an employer of labor against an insurer who had contracted to indemnify against damages sustained by the employer by reason of liability to its employees for "bodily injuries accidentally suffered" by them in their employment. The employer had been obliged to respond in damages to one Barry, an employee, who had become infected by glanders while cleaning a stable. It was said in the opinion, at page 225: "It is plain that Barry suffered bodily injury in consequence of becoming infected with glanders; as much so as if he had had a leg or an arm broken by a kick from a vicious horse. Indeed it is possible that the bodily injury caused by glanders was greater and more lasting than that caused by a broken leg or arm would have been." That case related to the kind of bodily injuries which arise from the relation of master and servant. It was decided about one year before the enactment of our workmen's compensation act. It relates to the same general subject matter. The law of accident insurance has been applied to injuries under the workmen's compensation act in England. *Wicks* v. *Dowell & Co., Ltd.,* [1905] 2 K. B. 225.

There is nothing in the act which leads to the conclusion that "personal injuries" was there used in a narrow or restricted sense. The provisions as to notice of the injury, Part II, §§ 15 to 18, both inclusive, as amended by St. 1912, cc. 172 and 571, § 3, indicate a purpose that information shall be given as to the time, place

and cause of the injury as soon as practicable after it is suffered. But this requirement can be complied with in the case of an injury caused by the inhalation of a poisonous gas producing such results as here are disclosed, as well as in the case of a blow upon the body. An argument may be drawn from the provisions of Part III, § 18, as amended by St. 1913, c. 746, § 1, in favor of a liberal interpretation of "personal injuries." By the section as originally enacted the duty was imposed upon every employer to keep a record of all injuries, but he was required to make return to the Industrial Accident Board only of "an accident resulting in a personal injury." By the amendment, which of course has no effect upon the legal rights of the parties in the present action, but which may be resorted to for discovery of legislative intention, the employer is required to make return of "the occurrence of an injury" and to state "the date and hour of any accident causing the injury." If these words are used accurately, a distinction is drawn between the injury and the accident causing the injury. The authority conferred upon the board of directors of the Massachusetts Employees' Insurance Association by Part IV, § 18, is to "make and enforce reasonable rules and regulations for the prevention of injuries" and not for the prevention of accidents. See also St. 1913, c. 813. The name "Industrial Accident Board," which is the administrative body created by Part III, is a mere title and cannot fairly be treated as restrictive of its duties.

The difference between the English and Massachusetts acts in the omission of the words "by accident" from our act, which occur in the English act as characterizing personal injuries, is significant that the element of accident was not intended to be imported into our act. The noxious vapors which caused the bodily harm in this case were the direct production of the employer. The nature of the workman's labor was such that they were bound to be thrust in his face. The resulting injury is direct. If the gas had exploded within the furnace and thrown pieces of " cherry " * hot coal through the holes into the workman's eyes, without question he would have been entitled to compensation. Indeed there probably would have been common law liability in such case.

---

* This word was used in the testimony described in the report of the committee of arbitration in reference to the color of the hot coal in the furnace.

*Dulligan* v. *Barber Asphalt Paving Co.* 201 Mass. 227. There appears to be no sound distinction in principle between such case and gas escaping through the holes and striking him in the face whereby through inhalation the vision is destroyed.

The learned counsel for the insurer in his brief has made an exhaustive and ingenious analysis of the entire act touching the words "injury" or "injuries," and has sought to demonstrate that it cannot apply to an injury such as that sustained in the case at bar. But the argument is not convincing. It might be decisive if " accident " had been the statutory word. It is true that in interpreting a statute words should be construed in their ordinary sense. Injury, however, is usually employed as an inclusive word. The fact remains that the word "injury" and not "accident" was employed by the Legislature throughout this act. It would not be accurate but lax to treat the act as if it referred merely to accidents. *Warner* v. *Couchman*, [1912] A. C. 35, at p. 38.

*Decree affirmed.*

E. C. *Stone*, for the insurer.
E. A. *Howes, Jr.*, for the employee.