### FRANK MAGGELET'S CASE.

Suffolk.    March 16, 1917. — July 24, 1917.

Present: RUGG, C. J., DE COURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act*, Personal injury, Procedure. *Practice, Civil*, Vacating decree. *Words*, "Personal injury."

Neurosis of the nerves supplying certain muscles, resulting from a posture which causes a cigar-maker when at his work to bend with shoulders forward so as to induce "pressure on the brachial plexus," is not a "personal injury" within the meaning of St. 1911, c. 751, Part II, § 1, for which such employee may be awarded compensation under the workmen's compensation act.

Upon an appeal from a decision of the Industrial Accident Board in a claim under the workmen's compensation act the Superior Court may vacate a decree which was made by that court without notice of a pending petition by the insurer for a rehearing before the Industrial Accident Board.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board awarding compensation to Frank Maggelet, who was employed as a cigar-maker in the cigar factory of Breslin and Campbell, incorporated, in Boston.

The case was heard by *Fox*, J., who on November 11, 1916, made a decree awarding the employee the sum of $321.43. On November 14, 1916, the insurer filed a motion to vacate the decree on the ground that before the decree was made the insurer had filed with the Industrial Accident Board a petition for a rehearing and reopening of the case. On November 16, 1917, *Fox*, J. made an order vacating the decree and filed the following memorandum of decision: "At the hearing of the motion to vacate the decree, the counsel for the claimant admitted that when he presented the decree to the court for allowance he knew that the insurer had filed with the board a petition for rehearing, and did not inform the court of this fact. The decree is therefore vacated on the ground that it was entered by inadvertence and under misapprehension concerning the state of the record."

On December 16, 1916, the Industrial Accident Board denied the insurer's petition for a rehearing and amended their former decision by striking out the words "and affirm and adopt the findings and decision of the committee of arbitration."

On December 18, 1916, by order of *Lawton*, J., a decree was entered reciting the amendment of the decision of the Industrial Accident Board and again ordering that the insurer should pay to the employee the sum of $321.43. The insurer appealed.

*L. C. Doyle,* for the insurer.

*B. A. Lockhart,* for the employee.

RUGG, C. J. This case comes before us on a finding and decision of the Industrial Accident Board with a report of all the material evidence. The finding is that "the employee was totally incapacitated for work by reason of a condition of occupational neurosis which arose out of and in the course of his employment."

It is undisputed that the employee was a cigar-maker by trade and had worked for the subscriber twenty-five years; and in March, 1916, he stopped work and on consulting a physician was told that he was troubled with "occupational neurosis;" and that during the preceding six months his arm had troubled him. Dr.

Joel E. Goldthwait, the impartial physician appointed by the board, testified that "he could find no evidence of disease whatever . . . . At the time he saw this man, he believed that his posture and habit of carrying himself was really the cause of his present pain in the arms; he could not say that there was anything outside the posture, peculiar to his trade, that causes him to have that pain. If this man would adopt a different posture, keep himself straight, he thinks he would recover from this trouble without much question; any occupation he might follow where he carried himself in that same position would cause the same trouble as the cigar-maker's occupation, will produce the same result; he found no evidence of the man being neurasthenic, and he does not believe that the continual rolling of cigars has caused the trouble that this man now has; he examined him for evidences of organic disease and found none; his muscles were practically all in normal tones and normal responses. . . . He has a posture which is not good and which he has had for many years; if he was standing up at his work and had this posture when he sat down, he would not be leaning on that group of nerves all the time, but because he is all the time leaning on that group of nerves, it has aggravated and brought this condition to a place where he had to quit work. If the man is handled right, he can be made splendidly well, and he thinks he can go on with that trade, but he thinks he has to be seated properly at his work." There was further medical evidence to the effect that "he is nervous and thinks about his arm and hand and makes an entirely, abnormally slight response to the request for any muscular action in that arm. He has no sign of any organic disease in arm at all and evidence of neurosis, and I think the condition is a pure neurosis that arises from his occupation;" and that "His work as cigar maker would influence the condition of neurosis to this extent: The position of cigar makers which causes them to bend forward with shoulders forward, as Dr. Goldthwaite states, would cause pressure on the brachial plexus, and make the condition worse. The employee should be able to work if he could be kept in proper position so that the pressure on the brachial plexus would not be caused by his position. . . . He deduced that the trouble was occupational neurosis from the fact that an occupational neurosis is the result of the use of certain muscles, or group of muscles, to such an extent that they cause a neurosis

of the nerves supplying these muscles. . . . It is very possible that there is a certain amount of pressure on the brachial plexus from the position cigar makers assume in their work; he traces it to the continued use of these muscles. . . . It is not peculiar to the cigar makers' trade."

There is here no foundation for a finding that the employee sustained "personal injury" which arose out of and in the course of his employment. "Personal injury" as used in the workmen's compensation act, has been held to be more comprehensive than the "personal injury by accident" of the English act. The cases which have arisen heretofore under our act have been of a different character from that here presented. In *Hurle's Case*, 217 Mass. 223, *Johnson's Case*, 217. Mass. 388, and *Doherty's Case*, 222 Mass. 98, the evidence showed that the employee was suffering from poisoning by the inhalation of gases or other noxious substances plainly connected with the performance of his work. Poisoning always has been regarded as a tortious act in the nature of a personal injury, for which damages might be recovered in an action at law if other elements of liability are present. *Thompson* v. *United Laboratories Co.* 221 Mass. 276. *Madden's Case*, 222 Mass. 487, 491. *Hurle's Case*, 217 Mass. 223, and cases collected at page 224. *Pinkley* v. *Chicago & East Illinois Railroad*, 246 Ill. 370. *Canfield* v. *Iowa Dairy Separator Co.* 172 Iowa, 164. *Wagner* v. *Jayne Chemical Co.* 147 Penn. St. 475. *Cox* v. *American Agricultural Chemical Co.* 24 R. I. 503. *Fox* v. *Peninsular White Lead & Color Works*, 84 Mich. 676, 682. In *McPhee's Case*, 222 Mass. 1, pneumonia brought on by sudden exposure during a fire was held to be a personal injury. That would be a personal injury by accident under the English act. *Coyle* v. *John Watson, Ltd.* [1915] A. C. 1. *Glasgow Coal Co. Ltd.* v. *Welsh*, [1916] 2 A. C. 1. In *Brightman's Case*, 220 Mass. 17, *Fisher's Case*, 220 Mass. 581, and *Madden's Case*, 222 Mass. 487, persons suffering from an organic infirmity of the heart were held to have sustained a personal injury when the exertion of the employment caused a lesion or further impairment of that organ destroying or affecting adversely its usefulness. These all are instances of a definite and appreciable attack upon some vital faculty or function having a specific connection with the employment. See also in this connection *Vennen* v. *New Dells Lumber Co.* 161 Wis. 370;

*Plass* v. *Central New England Railway,* 169 App. Div. (N. Y.) 826; *Archibald* v. *Ott,* 77 W. Va. 448. No case has gone so far as to hold that a "neurosis of the nerves" supplying certain muscles, resulting from a posture which causes the employee "to bend forward with shoulders forward" so as to induce "pressure on the brachial plexus" is a personal injury.

The words "personal injury" in their connection in this statute do not naturally lend themselves to a situation such as that here disclosed. The act relates to industrial conditions. It has to do with employment of labor. The act affords no relief against general disease. It is not a scheme for health insurance. It deals only with personal injuries following as an immediate result from the employment as its direct cause. In general it was intended as in the nature of a substitute for actions of tort for personal injuries at common law and under the employers' liability act, by employees against their employers. That is apparent from the provisions of Part I of the workmen's compensation act as well as the legislative resolves and reports preceding its enactment. But, as has been pointed out, the act goes beyond those limits and includes such diseases as fairly may be termed personal injuries. The act does not mention disease or occupational disease. See St. 1913, c. 813, § 12. It awards compensation for disease when it rightly may be described as a personal injury. A disease of mind or body which arises in the course of employment, with nothing more, is not within the act. It must come from or be an injury, although that injury need not be a single definite act but may extend over a continuous period of time. Poisoning, blindness, pneumonia, or the giving way of heart muscle, all induced by the necessary exposure or exertion of the employment, fall within well recognized classes of personal injuries. On the other hand the gradual breaking down or degeneration of tissues caused by long and laborious work is not the result of a personal injury within the meaning of the act. A person may exhaust his physical or mental energies by exacting toil, and become unfit for further service, but he is not because of this entitled to compensation, for the reason that this condition cannot fairly be described as a personal injury. The disease must be, or be traceable directly to, a personal injury peculiar to the employment. A nervous condition dependent upon poor posture of the body in our opinion

does not constitute a commonly known and well recognized personal injury consequent upon employment. It is difficult to establish and define a plain line of division between what is personal injury within the act on the one hand and simple disease on the other hand. But personal injury and disease are not synonymous. They are different in meaning. One does not include the other. They are classifications differing from each other in kind, although they may overlap in some instances.

There is not enough in this record to show that the condition of the employee is a necessary result of his work. It arose on all the evidence from a bad posture of the body while at work. But there is nothing to show that this was a necessary incident of the employment. Scarcely anything is more difficult to control or influence than the position of the body of another. Whether one shall be erect or stooping of figure, whether the carriage of the person shall be lithe or stiff, whether the chest shall be narrow or broad and the space for the lungs correspondingly cramped or enlarged, whether breathing shall be deep and full, or short and impaired, depend in large degree upon the habit, temperament and appreciation of the requisites of right living on the part of the individual. Interference on these matters by the employer might be regarded as an unwarranted impairment of personal privilege. There are few employments which, pursued without regard to the laws of health and the requirements of correct method of life, may not invite some form of disease. This record is bare of any evidence to show that it is a reasonably necessary result of the employment that those following it should have neurosis or that the inducing proximate cause of that condition is the employment.

This court has gone further than any other, so far as we are aware, in holding that poisoning, heart lesion and kindred physical ills may be found to be personal injuries under the act. The courts of other states of the Union, in construing workmen's compensation acts more or less similar to our own, have declined to follow *Hurle's Case*, 217 Mass. 223, and the principle there established, and have held that poisoning arising out of the employment through the inhalation of gases or other substance was not a personal injury under the act. *Adams* v. *Acme White Lead & Color Works*, 182 Mich. 157. *Industrial Commission of*

*Ohio* v. *Brown,* 92 Ohio St. 309. *Miller* v. *American Steel & Wire Co.* 90 Conn. 349. See *Liondale Bleach, Dye & Paint Works* v. *Riker,* 56 Vroom, 426. Nevertheless we remain content with our decisions in this particular. But the doctrine has not been established by these decisions that every disease caught by an employee in the course of his employment is a personal injury under the act. See in this connection *Turvey* v. *Brinton's, Ltd.* [1904] 1 K. B. 328, 338; *Brinton's, Ltd.* v. *Turvey,* [1905] A. C. 230, 238; *Eke* v. *Hart-Dyke,* [1910] 2 K. B. 677, 682.

It seems clear for these reasons that the present case cannot rightly be termed a personal injury within the meaning of those words in the act.

The case is before us properly. The entry of the first decree was manifestly caused by the failure of the employee to state the case truly and fully to the court, and therefore was entered at least through mistake and accident. It was within the power of the court to correct such an error. *Karrick* v. *Wetmore,* 210 Mass. 578. *Hathaway* v. *Congregation Ohab Shalom,* 216 Mass. 539. The only decree from which an appeal could be taken properly was the one of December 19, 1916.

It follows that the decree must be reversed and a new decree entered to the effect that the insurer is under no liability.

*So ordered.*