## MOSES PIMENTAL'S CASE.

Suffolk. March 8, 1920. — May 19, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Workmen's Compensation Act,* Injuries to which act applies. *Proximate Cause.*

Incapacity of a cigar maker, caused by neuralgic pain which, in a proceeding under the workmen's compensation act, an impartial physician testified was likely to be caused by any other occupation and could result independently of any occupation or from any sitting or standing occupation, and which, upon evidence including that of the impartial physician, the Industrial Accident Board found

was induced by muscular action in rolling cigars, while it properly may be found to have arisen during the course of the employee's employment, cannot be found to have arisen from it in such a sense as to entitle him to compensation under the workmen's compensation act.

An occupational disease is not a personal injury, arising out of and in the course of employment, compensation for which may be awarded under St. 1911, c. 751, Part II, § 1.

APPEAL under the workmen's compensation act from a decision of the Industrial Accident Board granting compensation of $14 a week to the employee for injuries, described in the opinion, found by the board to have arisen out of and in the course of his employment by Alles and Fisher Cigar Company.

In the Superior Court the appeal was heard by *Wait*, J. Material evidence is described in the opinion. A decree was entered in accordance with the decision of the Industrial Accident Board; and the insurer appealed.

*G. Gleason,* for the insurer.

*P. L. Keenan,* for the employee.

CROSBY, J. The employee is a cigar maker and worked continually at his trade for fourteen or fifteen years. Early in the year 1918 he began to have pain in the region of the back of his neck, and in February or March, 1919, he consulted a physician who told him that he had occupational neurosis. On May 2, 1919, he was obliged to give up his work.

William J. Daly, the impartial physician, testified that the employee had "an undeveloped left side; a shortened left leg with sinuses from old pus processes about the left buttock and the anterior surface of the hip; . . . faulty posture both in standing and sitting; . . . distortion of the spinal column . . . [the result] of faulty posture, and . . . a malformation of the thoracic bone cage;" that "all this distortion and malformation had the effect of producing bony pressure on the spinal nerves . . . so that when the loading upon this region, incident upon muscular action in rolling cigars, took place, after a number of years, it produced neuralgic pain. . . . In consequence of his working and using the movements he did his work as a cigar maker was a certain consequence of causing his condition. In the first place, he sits faulty; his left buttock being undeveloped, his left pelvis sags. He does not sit evenly on the buttocks. In that way he crowds the vertebra unevenly in the other parts of the spine, so that any sitting oc-

cupation could contribute to the brachial pain. . . . In a man with no asymmetry, who was in a fair state of nutrition, this condition probably never would develop. . . . The particular movements which produce this condition are the rolling process at the end of the making of a cigar, whereby a weight of the forearm, arm, and some of the shoulder and shoulder girdle are brought down upon the cigar in order to make a firm wrapper." He further testified he "was of the opinion that if the employee had a sitting down job where there was no muscular loading or tension, as in the rolling process, he might have supported the condition of his spine for years longer without trouble. He believed that the upset factor in the thing was the muscular tension and the loading incidental upon the rolling movements; . . . that the employee's condition would come on or did come on quicker because he rolled cigars than it would have had he worked at any other sitting down occupation. . . . He thought that the rolling movements are the movements which brought about the pain. . . . This employee has not neuritis." Further, "He thought that if the employee assumed a different posture by putting a pad under his left hip, and by raising the table at which he worked, he would go along 'all right.'" "In his opinion, any sitting occupation is likely to cause the neuralgic pain which this employee experienced in the region of his neck. If he sat for eight hours a day in his home reading a book 'with his hip in that position, in any position,' he would be likely to have the same sort of a pressure in that brachial region as he had while sitting at work. If he sat in a chair at his home over a period of fourteen years, reading a book every day, he might get from that the neuralgic pain which he experienced in March of 1919."

Another physician testified that he had examined the employee and that "he did not see how his occupation could produce his condition. This employee's occupation involved chiefly the use of his arms, and his arms were free from all trouble. . . . This employee's condition is not in the muscles; it is in the skin, as far as he could determine . . . that occupational neurosis is due to the action of muscles used in the occupation. . . . He was of the opinion that there was a mental situation in this case. . . . He attributed this employee's condition to a combination of a mental attitude and a skin sensation."

The single member found that "while there was an underlying
and pre-existing condition, following hip disease, it was the muscu-
lar action in rolling cigars for a number of years which precipi-
tated the neuralgic pain and brought into being the personal
injury which totally incapacitated the employee for work;" and
that "Finally, as a result of the effect of the muscular move-
ments required by his employment in making cigars, acting upon
his particular condition of health, neuralgic pain, a personal
injury under this act, developed. The employee's total inca-
pacity for work is due to that personal injury and will continue
for a period which is not now determinable." He also found that
the employee was entitled to compensation under the act. On the
same evidence the Industrial Accident Board adopted the findings
and rulings of the single member.

The case at bar is similar in many respects to *Maggelet's Case,*
228 Mass. 57, and is governed by it. While the board found
that the neuralgic pain was induced by muscular action in rolling
cigars for a number of years, the impartial physician testified that
any other occupation was likely to cause the pain from which the
employee suffered, and that this condition could result independ-
ently of any occupation, and could come from any sitting or
standing occupation; in view of this, together with all the other
evidence, we are of opinion that the pain could not have been
found to have been a reasonably necessary result of the em-
ployment, and cannot be said to have been a personal injury
peculiar to it.

We are also of opinion that there was no sufficient evidence
to warrant a finding that the employee had neurosis, — a disease
with which cigar makers are sometimes afflicted, — and the im-
partial physician so testified; nor is there evidence that he had
any disease, the reasonable inference being that the neuralgic pain
was not due to his occupation but was rather the result of faulty
posture brought about by long and laborious work, a condition
which would have been equally liable to arise in whatever employ-
ment he might have been engaged, or if not employed at all. *Mc-
Nicol's Case,* 215 Mass. 497. *Donahue's Case,* 226 Mass. 595.
Although the condition arose during the course of the employment,
it cannot be found to have arisen from it. "A nervous condition
dependent upon poor posture of the body in our opinion does not

constitute a commonly known and well recognized personal injury consequent upon employment. . . . But personal injury and disease are not synonymous. They·are different in meaning. One does not include the other." *Maggelet's Case,* 228 Mass. 57, 61, 62.

If it could be held that the employee was suffering from an occupational disease, still the workmen's compensation act does not in terms include disease. See St. 1913, c. 813, § 12. It cannot be held to cover disease contracted by employees in the course of and arising out of their employment. Pain is not disease, nor is disease resulting in pain a personal injury.

In *Hurle's Case,* 217 Mass. 223, *Johnson's Case,* 217 Mass. 388, and *Doherty's Case,* 222 Mass. 98, there was evidence that the employee was suffering from poisoning arising from the performance of his work. Poisoning has generally been regarded as in the nature of a personal injury, *H. P. Hood & Sons* v. *Maryland Casualty Co.* 206 Mass. 223, but the doctrine of those cases which dealt with disabilities in the nature of personal injuries cannot be held to apply to the present case. The language in the opinion in *Johnson's Case, supra,* is to be limited to the precise facts in that case and is not an authority in favor of the contention of the employee in the case at bar.

While the act should be construed liberally, it should not be extended to cases which cannot reasonably be interpreted as within its scope. The statement in *Maggelet's Case, supra,* at page 61, that "No case has gone so far as to hold that a 'neurosis of the nerves' supplying certain muscles, resulting from a posture which causes the employee 'to bend forward with shoulders forward' so as to induce 'pressure on the brachial plexus' is a personal injury," applies in principle to the case at bar, although the employee is not suffering from neurosis, and notwithstanding the finding of the board that as a result of the muscular movements required in rolling cigars acting upon his particular condition, neuralgic pain developed.

It follows that the decree must be reversed and a decree entered in favor of the insurer.

*So ordered.*