## INDIAN TERRITORY ILLUMINATING OIL CO. v. LOMAX et al.

No. 22653. Opinion Filed Feb. 9, 1932.

A. J. Follens and Clayton B. Pierce, for petitioner.

Arnold T. Fleig, for respondent.

McNEILL, J. This is an original proceeding commenced in this court by petitioner, Indian Territory Illuminating Oil Company, to review an order of the State Industrial Commission, awarding compensation to the respondent J. C. Lomax. On the 2nd day of July, 1931, the Commission entered its order finding that the respondent had sustained an accidental injury arising out of and in the course of his employment with petitioner on the 31st day of January, 1931, resulting in injury to both eyes to the extent of 12 per cent. permanent disability, and awarded respondent compensation at the rate of $18 per week for 60 weeks.

Petitioner contends that the award should be vacated for two reasons: First, because "the award is contrary to law," in that the Commission used the wrong method in computing the number of weeks of compensation in awarding the respondent 60 weeks for 12 per cent. of permanent total loss of both eyes, when, if any award should have been made, it should have been for 12 per cent. of 100 weeks for each eye. Second: "The purported findings of fact contained in said order are not reasonably supported by any competent evidence," in that the evidence does not show that the disability of respondent resulted from an "accidental injury."

Under the first proposition, it is the con-

tention of the petitioner that the award, if made, should have been made under paragraph 3 of section 7290, C. O. S. 1921, as amended by chapter 61, sec. 6, Session Laws of 1923, for 12 per cent. of 100 weeks for the loss of each eye or 24 weeks. This same question has heretofore been determined against the petitioner's contention in the case of Maryland Casualty Co. v. State Industrial Commission, 139 Okla. 302, 282 P. 293, wherein this court, in the fourth paragraph of the syllabus, says:

"Under the Workmen's Compensation Act, there is a specific provision for the loss of an eye and another for the loss of both eyes. An award for partial impairment of both eyes should be fixed from the latter provision, and not by taking the award for the total loss of one eye and adding it to the award for the partial impairment of the other eye."

Paragraph 1 of said section 7290, C. O. S. 1921, provides that loss of both eyes shall, in the absence of conclusive proof to the contrary, constitute permanent total disability. An award for partial impairment of both eyes should be fixed from this provision and not by taking the award for each eye separately and then adding the awards together.

Under the second proposition, the petitioner contends that the finding of the Commission that the respondent sustained an accidental injury is not reasonably supported by any competent evidence. It contends that the phrase, "accidental injury," as used in the Workmen's Compensation Law, means that there must be an accident and an injury at a time that is definite and can be fixed with certainty; that the evidence in this case shows that the disability of the respondent was not attributable to the circumstance of his getting metal in his eyes, and that there was no accident; that such disability was the result of his working at his occupation for a long period of time and gradually developed into an occupational disease, and was not compensable under the Workmen's Compensation Law.

With reference to the injury, the respondent testified that, on January 31, 1931, while in the employment of petitioner, in cutting pipe and making fittings, an acetylene torch which he was using backfired and knocked hot metal into both of his eyes; that one of the petitioner's employees took him to Von Wedel's Clinic, where he had his eyes treated three or four times during a period of about ten days, when he was released by the physician, although respondent returned to his work the morning after his alleged injury. With reference to the alleged accident and injury, respondent testified as follows:

"Q. Do you know whether or not the metal hit in the ball of your eyes or around the light of your eye on the side? A. It was in the center part of the eye. Q. How do you know? A. That is where they took it from and there was a red spot there afterwards before the eye healed up, and that is where they found all of the pieces of metal in my eye. * * * Mr. Lomax, when you went to work for the I. T. I. O., what was the condition of your eyes, at that time? A. They seemed to be as good as anybody's; there was nothing wrong with them then as far as I know, they never did give me any trouble. Q. When did your eyes start to give you any trouble? A. From the time I was hurt, continuously from then on. * * * Q. Now, subsequent to the injury you worked a month, now was your eyes getting increasingly worse or better? A. From the time of the injury they were affected. Q. In what way do they bother you? A. They smart and burn, and feel kindly like a fellow's eyes do after he gets sand in them."

The medical services and treatment rendered the respondent at the Von Wedel Clinic was furnished by the petitioner. The physician who treated the respondent at the clinic did not testify at the hearing, but Dr. Mussill testified that he had examined the respondent on April 25, 1931; that the respondent had a loss of vision of 12 per cent.; that in his opinion the loss of vision was permanent; that at the time of the examination, he found no scars; that the cornea was clear, and that in his opinion the loss of vision was due to the glare of the light from the acetylene torch.

In the case of Rockford City Traction Co. v. Industrial Commission, 295 Ill. 358, 129 N. E. 135, the Commission made an award of compensation in favor of a welder who lost the use of both of his eyes, on the theory that it was the result of the accidental breaking of his hood, which exposed his eyes to the dazzling light resulting from welding, and not from a pre-existing disease; that even though it was conceded that there was a pre-existing disease, the court said therein that compensation might be awarded, if the disease was aggravated and accelerated by an accidental injury in the course of the employment. In that case the employee was welding rails and suffered an injury which later resulted in the total loss of both eyes. The employee operated an electric welder which was applied to the ends of the rails as they are laid in the track, the purpose being to melt the steel and thereby cause the rails to join. For this work, it was necessary for the welder to protect

his eyes with colored glasses as a dazzling light was generated. A hood was provided which had in it a double thickness of colored glass—one red and the other green. Because of the excessive heat of a piece of molten metal coming in contact with the glass, or for some other unexplained reason, one set of these glasses broke and dropped out and the employee received the flash of light on his naked eyes. For a few minutes his sight was blurred and within a few minutes his sight returned. He replaced the broken lenses and in about 30 minutes returned to his work. However, his sight gradually failed him until he was not able to work longer. In that case it was contended that the loss of his sight was not due to the accident, but to a pre-existing disease. Immediately after the accident his eyes began to pain him.

In the instant case the respondent was not engaged continuously in the specific work he was performing at the time of the receipt of his injury. He stated that hot metal hit his eyes. The receipt of flying hot metal in the eyes was not to be expected by respondent in his line of work. The glasses cracked and the light, intense and dazzling in that particular line of work, may have pierced the eyes through the cracked lenses, which in their cracked condition might not have been impervious to this intense ray of light. The use of the eyes thereafter, in the work of respondent, might have aggravated their condition caused by the receipt of the alleged injury. The Commission, from all the testimony, found that the respondent received an accidental injury to his eyes arising out of and in the course of his employment.

In discussing occupational diseases, the Supreme Court of Massachusetts, in the case of In re Maggelet, 228 Mass. 57, 116 N. E. 972, says:

"Poisoning, blindness, pneumonia, or the giving way of heart muscle, all induced by the necessary exposure or exertion of the employment, fall within well recognized classes of personal injuries. On the other hand, the gradual breaking down or degeneration of tissues caused by long and laborious work is not the result of a personal injury within the meaning of the act."

We are of the opinion that the instant case does not come within the rule heretofore announced by this court as an occupational disease. The respondent testified, in substance, and his evidence is undisputed, that the trouble with his eyes began on the date of the alleged accident, and was continuous thereafter.

We are of the opinion that there is sufficient evidence in the record to support the finding of the Commission that the disability of respondent was due to an accidental personal injury received by him arising out of and in the course of his employment with petitioner.

The award of the State Industrial Commission is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, CULLISON, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur.

Note.—See under (1) annotation in 8 A. L. R. 1326; 24 A. L. R. 1467; 67 A. L. R. 794, 797; 73 A. L. R. 711; 28 R. C. L. 821; R. C. L. Perm. Supp. p. 6243.