WALTER A. ZEROFSKI'S CASE.

Suffolk.   January 6, 1982. — March 18, 1982.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Workmen's Compensation Act*, Injuries to which act applies, Subsequent
injury, What insurer liable.

Review of the decisions of this court pertaining to a determination wheth-
er an injury is compensable under § 26 of G. L. c. 152, the Workmen's
Compensation Act.  [592-595]

Where an employee who was injured in 1964 in the course of his employ-
ment suffered an aggravation of his injury due to his standing and
walking on concrete floors at work from 1966 to 1976, the aggravation
resulted from "bodily wear and tear" and was not a compensable "per-
sonal injury arising out of and in the course of . . . employment"
under G. L. c. 152, § 26; therefore, the employer's insurer against
workmen's compensation claims in 1964 was chargeable for disability
benefits on the basis of the original injury.  [595-596]

CERTIFICATION to the Superior Court Department of a
decision by the Industrial Accident Board.

The case was heard by *Lynch*, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Deirdre H. Harris* (*Philander S. Ratzkoff* with her) for
the insurer.

*Wayne A. Perkins* for the employee.

*John P. Morgan* for the employer.

HENNESSEY, C.J.   This appeal calls for interpretation of
the phrase "personal injury arising out of and in the course
of . . . employment," as it appears in § 26 of our workers'
compensation act,[1] G. L. c. 152, § 26, as amended through

---

[1] Although the act traditionally has been known as the "Workmen's
Compensation Act," we find the term "workers' compensation" more ap-
propriate.

St. 1973, c. 855, § 1. We conclude that on the particular facts presented, the aggravation of the plaintiff's prior injury, due to years of standing and walking at work, was not such a personal injury.

We summarize the facts as found by a single member of the Industrial Accident Board, and adopted by the reviewing board. The claimant, Walter A. Zerofski, was employed as a foreman by James J. Gallery, Inc. (employer), from 1950 until 1976, when he was laid off for economic reasons. As foreman, he was responsible for moving frozen foods from warehouse to trucks. On the date of his layoff, he was suffering from a serious leg ailment, and was "totally disabled . . . from doing work on the open market." There were two contributing causes of this disability. The first was a broken toe sustained in 1964 when a pallet fell on his foot. The second cause was prolonged "standing and walking on concrete floors" at work between 1966 and 1976, which aggravated the original injury. Although Zerofski's leg frequently "broke down" during those ten years, he filed no claims of injury until 1976. Neither the findings nor the transcript points to any specific incidents or work conditions — other than standing and walking — as causes of the aggravation.

In 1964, when Zerofski sustained his original injury, the employer was insured against workers' compensation claims by Commercial Union Assurance Companies (insurer), which paid the claims Zerofski filed at the time. In 1966, the employer became self-insured. Zerofski filed a claim against the insurer for his present disability after his layoff in 1976, and a similar claim against the employer in 1977, slightly more than a year later.

After a hearing, a single member of the Industrial Accident Board ordered the employer, as self-insurer, to pay Zerofski compensation for total disability, and dismissed Zerofski's claim against the insurer. The reviewing board affirmed the decision of the single member. The employer appealed to the Superior Court, which reversed the order of the board and ordered the insurer to pay. All parties then

appealed to the Appeals Court. The Appeals Court affirmed the decision of the Superior Court (12 Mass. App. Ct. 154 [1981]), and we granted further appellate review.

The principal question in this case is which of the two defendants — the insurer or the employer — must pay Zerofski's compensation. When successive compensable injuries contribute to an employee's disability, the insurer covering the risk at the time of the most recent injury must assume all payments for the final disability. *Carrier* v. *Shelby Mut. Ins. Co.*, 370 Mass. 674, 675-676 (1976). *Evans's Case*, 299 Mass. 435, 436-437 (1938). Therefore, if aggravation of Zerofski's condition by years of standing and walking at work was a compensable injury and a contributing cause of total disability, the employer must pay total disability compensation. If not, the insurer is chargeable on the basis of the original injury.

Our workers' compensation act affords employees broad protection against work-related injury. Recovery does not depend on the fault of the employer or upon the foreseeability of harm. *Madden's Case*, 222 Mass. 487, 496 (1916). *Sponatski's Case*, 220 Mass. 526, 531 (1915). L. Locke, Workmen's Compensation § 9, at 10 (2d ed. 1981). Instead, it is based on "a unique theory of distribution of the human loss directly arising out of commercial and industrial enterprises." *Madden's Case, supra* at 496.

The act provides that employees may collect workers' compensation for "personal injur[ies] arising out of and in the course of . . . employment." G. L. c. 152, § 26. This phrase covers a wide range of injuries. Injury "arises out of" employment if it is attributable to the "nature, conditions, obligations or incidents of the employment; in other words, [to] employment looked at in any of its aspects." *Caswell's Case*, 305 Mass. 500, 502 (1940). Unlike many workers' compensation statutes, our act does not require that injury occur "by accident," so that gradually developed injuries are compensable as well as those caused by sudden incidents. See, e.g., *Pell* v. *New Bedford Gas & Edison Light Co.*, 325 Mass. 239 (1950) (eye injury due to inade-

quate light over long period); *Sullivan's Case*, 265 Mass. 497
(1929) (lung disease due to inhalation of granite dust);
*Hurle's Case*, 217 Mass. 223 (1914) (blindness due to repeat-
ed exposure to coal gas). Cf. 1B A. Larson, Workmen's
Compensation § 37.10 (1980 & Supp. 1981). Further, an
employee may recover even when his injury is due in part to
his own weakness or vulnerability; the employer must take
his employee "as is." See L. Locke, *supra* § 173. If a condi-
tion or incident of work aggravates a preexisting health
problem, the employee has suffered a "personal injury,"
and may recover from the employer for his entire disability,
without apportionment. *Madden's Case*, 222 Mass. 487,
493-496 (1916). See, e.g., *Brzozowski's Case*, 328 Mass. 113
(1951) (strain on particular workday aggravated heart con-
dition); *Duggan's Case*, 315 Mass. 355 (1944) (dust inhala-
tion aggravated tuberculosis); *Crowley's Case*, 223 Mass.
288 (1916) (injury at work aggravated syphilis). Finally, an
identifiable incident or strain need not be unusual or severe
to support compensation if the particular employee suc-
cumbs to it. See, e.g., *McManus's Case*, 328 Mass. 171
(1951) (bending over caused hernia).

There are, however, certain limits on compensable in-
jury, which have taken shape in a line of decisions denying
recovery for "[b]odily wear and tear resulting from a long
period of hard work." *Spalla's Case*, 320 Mass. 416, 418
(1946). *Doyle's Case*, 269 Mass. 310 (1929), for example,
held that a laborer could not recover for a weakened back
caused by years of hard labor — the worker had simply "ex-
hausted his physical energies." *Id.* at 312. Similarly,
*Burns's Case*, 266 Mass. 516 (1929), denied recovery to a
watchman whose heart failure was due to the aggravating
effect of miles of nightly walking at work upon a preexisting
heart condition. The watchman's "ultimate breakdown
[was] merely the natural effect of exertion." *Id.* at 518.
Other examples in which recovery has been denied include
*Begin's Case*, 354 Mass. 594 (1968) (job experiences may
have contributed to mental illness), *Spalla's Case*, *supra*
(years of hard labor weakened abdominal walls), *Reardon's*

*Case,* 275 Mass. 24 (1931) (years of handling tools injured hand), *Pimental's Case,* 235 Mass. 598 (1920) (years of sitting with poor posture to roll cigars caused nerve disorder), and *Maggelet's Case,* 228 Mass. 57 (1917) (same). See also *Korsun's Case,* 354 Mass. 124 (1968) (general concern over job security, not proved related to incidents at work, aggravated heart condition).

The line between compensable injury and mere "wear and tear" is a delicate one, as a comparison of the results reached in past decisions reveals. Nevertheless, the distinction is necessary to preserve the basic character of the act. The "purpose [of the act] is to treat the cost of personal injuries incidental to . . . employment as a part of the cost of business." *Madden's Case,* 222 Mass. 487, 494-495 (1916). "It is not a scheme for health insurance." *Maggelet's Case,* 228 Mass. 57, 61 (1917). To be compensable, injury must arise "out of" as well as "in the course of" employment, and "[a] disease of the mind or body which arises in the course of employment, with nothing more, is not within the act." *Id.* Much of the responsibility for separating injuries that are sufficiently work-related from those that are not rests with the Industrial Accident Board, which must determine as a matter of fact whether a causal connection exists between employment and injury. *McManus's Case,* 328 Mass. 171, 173 (1951). *Brzozowski's Case,* 328 Mass. 113, 115-116 (1951). The distinction between compensable and noncompensable injuries, however, involves more than the factual problem of causation. In some cases work may be a contributing cause of injury, but only to the extent that a great many activities pursued in its place would have contributed. When this is so, causation in fact is an inadequate test.

Drawing from the nature of the purposes of the act as we have described them, and from the pattern of our decisions over the years, we arrive at the following restatement of the range of harm covered by the act. To be compensable, the harm must arise either from a specific incident or series of

incidents at work,[2] or from an identifiable condition that is not common and necessary to all or a great many occupations.[3] The injury need not be unique to the trade,[4] and need not, of course, result from the fault of the employer. But it must, in the sense we have described, be identified with the employment.[5]

Zerofski's complaint against the employer falls on the side of "wear and tear." Undoubtedly, the initial injury to his toe in 1964 was a contributing cause of his disability, and a compensable personal injury within the meaning of the act.[6] The aggravation of the injury over the next ten years of work, however, did not amount to a personal injury. There is nothing to distinguish these ten years of work from other

---

[2] Our decisions place injuries attributable to specific events at work within the business risks covered by the act, even when employment does not expose employees to an unusual risk greater than that experienced by the general public. *Caswell's Case,* 305 Mass. 500, 502 (1940) (injury at work during hurricane). See *Fitzgibbons's Case,* 374 Mass. 633, 638 (1978).

[3] In *Albanese's Case,* 378 Mass. 14, 18 & n.4 (1979), we suggested — although we did not decide — that a stricter standard of proof might apply in cases involving mental illness. There, we permitted recovery for mental illness caused, or at least aggravated, by a "series of identifiable stressful work-related incidents occurring over a relatively brief period of time." We express no opinion here on the problem of mental injury.

[4] Some of the early decisions of this court applying the "wear and tear" doctrine appeared to require that the injury, to be compensable, must have been "peculiar to the employment." See, e.g., *Maggelet's Case,* 228 Mass. 57, 61 (1917). This strict statement of the test for compensable injury has been eroded by subsequent decisions. See, e.g., *Brown's Case,* 334 Mass. 343 (1956) (heart attack caused by "extremely heavy workload" compensable); *Pell* v. *New Bedford Gas & Edison Light Co.,* 325 Mass. 239 (1950) (injury to eyes caused by poor lighting compensable).

[5] The principles we have restated here are reflected in a 1941 amendment to the act, inserted to bring infectious and contagious diseases within the coverage of the act. The amendment states that such diseases qualify as "personal injuries" if "the nature of the employment is such that the hazard of contracting such diseases by an employee is inherent in the employment." G. L. c. 152, § 1 (7A), inserted by St. 1941, c. 437.

[6] The insurer does not contest the finding of total disability or the finding of causal connection between the initial toe injury and the ultimate disability.

occupations that Zerofski might have pursued. Prolonged standing and walking are simply too common among necessary human activities to constitute identifiable conditions of employment. Therefore, the insurer, and not the employer, is liable for disability benefits.

The Superior Court judge based his award against the insurer upon rates of compensation effective in 1964, the date of the original injury. The employee contends that the applicable rates were those effective in 1976, when total disability occurred. In support, he cites G. L. c. 152, § 35B, which provides that when an employee has been compensated once, and suffers a "subsequent injury," compensation should be based on rates in effect at the time of the subsequent injury, "whether or not [it is a] recurrence of the former injury." [7]

The employee did not argue this issue before the Industrial Accident Board; nor did he have occasion to, in light of the board's disposition of the case. Further, the record before us on this matter is incomplete. Although we do not believe that the employee should be considered to have lost his right to raise § 35B, we prefer not to decide the question of applicable rates until the board has addressed it. Therefore, this aspect of the case should be returned for consideration by the board. [8]

We affirm the judgment of the Superior Court in so far as it requires the insurer to pay benefits to the employee, and dismiss the employee's claim against the self-insured

---

[7] The insurer concedes that, in light of the statute's reference to recurrences of former injuries, the term "subsequent injury" covers a broader range of harm than does the phrase "personal injury arising out of and in the course of . . . employment," which we considered in the main body of this opinion. Thus Zerofski may have suffered a "subsequent injury," even though he did not suffer a "personal injury arising out of and in the course of . . . employment."

[8] Our conclusion that the insurer is responsible for all payments makes it unnecessary for us to address the employer's arguments concerning notice, timely filing, and the sufficiency of the evidence.

employer. We remand the case to the Superior Court with instructions to remand to the Industrial Accident Board for determination of the applicable rate of compensation.

*So ordered.*