SUPREME JUDICIAL COURT 
 
 JEFF STACY'S CASE

 
 Docket:
 SJC-13712
 
 
 Dates:
 March 3, 2025 – April 15, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Workers' Compensation Act, Injuries to which act applies, Coverage, Insurer, Decision of Industrial Accident Reviewing Board. Department of Industrial Accidents.
 
 

             Appeal from a decision of the Industrial Accident Reviewing Board.
            The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.
            John J. Canniff (Robert S. Martin also present) for the insurer.
            Joseph P. McKenna, Jr., for the employee.
            Wystan M. Ackerman & Jonathan E. Small, for American Property Casualty Insurance Association, amicus curiae, submitted a brief.
            WENDLANDT, J.  When the Governor declared a state of emergency in the Commonwealth, and shut down all nonessential businesses and services, in light of the world-wide pandemic arising from the infectious SARS-CoV-2 virus, Jeff Stacy was one of the few individuals who were urged to continue to work.  Heeding the Governor's call, he continued to work as a lineman for Unitil Corporation (employer), a utility company, providing an essential service to keep electricity flowing to our homes.  Working "shoulder to shoulder" with fellow utility company employees, as required by his work, Stacy was exposed to the virus and eventually, in February 2021, succumbed to the illness, contracting COVID-19 and suffering a total disability.
            Stacy applied for workers' compensation benefits from his employer's insurer, Travelers Indemnity Company of Connecticut (insurer).  The insurer denied his claim.  Following an evidentiary hearing, a Department of Industrial Accidents administrative judge found in Stacy's favor, determining as a matter of fact that the hazard of contracting COVID-19 was "inherent" in Stacy's employment during the relevant period.  G. L. c. 152, § 1 (7A).  The reviewing board (board) affirmed, adopting the facts found by the administrative judge.  Concluding that the decision allowing Stacy's workers' compensation claim was supported by adequate evidentiary support and exhibited reasoned decision-making, and that the decision was not contrary to law, we affirm.[1]
            1.  Statutory framework of workers' compensation.  Codified in G. L. c. 152 (workers' compensation act or act), the workers' compensation system provides monetary payments to covered employees who suffer compensable injuries arising out of and in the course of their employment.  G. L. c. 152, § 26.  "The 'purpose [of the act] is to treat the cost of personal injuries incidental to . . . employment as a part of the cost of business.'"  Zerofski's Case, 385 Mass. 590, 594 (1982), quoting Madden's Case, 222 Mass. 487, 494-495 (1916).  The act generally requires each employer, as defined by G. L. c. 152, § 1 (5), to obtain workers' compensation insurance on behalf of its employees or to be certified as a self-insured employer.  G. L. c. 152, § 25A.  Employees who receive workers' compensation benefits may not sue their employers for claims that arise from work-related injuries.  See G. L. c. 152, §§ 23, 24, 25.  See also DiCarlo v. Suffolk Constr. Co., 473 Mass. 624, 625 (2016) (discussing extent of limitation on workers' claims against employers).
            To be compensable under the act, a "harm must arise either from a specific incident or series of incidents at work, or from an identifiable condition that is not common and necessary to all or a great many occupations" (footnote omitted).  Zerofski's Case, 385 Mass. at 594-595.  Relevant to the present case, G. L. c. 152, § 1 (7A), specifically defines compensable "personal injury" to include infectious or contagious diseases in certain circumstances.  The act states in pertinent part:  
"'Personal injury' includes infectious or contagious diseases if the nature of the employment is such that the hazard[2] of contracting such diseases by an employee is inherent in the employment" (emphases added).
G. L. c. 152, § 1 (7A).[3]  We have explained that "[w]hen, because of the nature of the employment, a possibility exists that an employee may contract an infectious or contagious disease, it becomes a question of fact whether the likelihood of infection or contagion is so essentially characteristic of the employment as to warrant a finding that the danger is inherent therein."  Perron's Case, 325 Mass. 6, 9 (1949).
            2.  Background.  a.  Stacy's employment during the COVID-19 pandemic.[4]  Stacy was employed as a head lineman.  His work was physically demanding and included installing, repairing, and replacing overhead and underground electrical wires and related equipment, such as poles and transformers.  He was also required to be available for emergency work, which involved assessing damage and coordinating its repair, including during inclement weather.
            At the beginning of each shift, Stacy and his coworkers gathered in a garage to be informed of their assignments.  Thereafter, working "shoulder to shoulder" in a stockroom, the employees would retrieve the parts and equipment necessary to carry out their assignments.  Linemen generally worked in teams and drove trucks to and from work sites in pairs.
            In early March 2020, the Governor declared a state of emergency in the Commonwealth because of the spread of COVID-19.  On March 23, 2020, after the World Health Organization declared that the COVID-19 outbreak was a pandemic, the Governor issued COVID-19 Order No. 13, which directed that all businesses and organizations not providing "COVID-19 essential services" "shall close their physical workplaces and facilities . . . to workers, customers, and the public."  With regard to "COVID-19 essential services," however, the Governor "urged" those businesses and organizations "to continue operations during the state of emergency."  Exhibit A to Order No. 13 identified "COVID-19 essential services," which included the "electricity industry" and encompassed "[w]orkers who maintain, ensure, or restore the reliable generation, transmission, and distribution of electric power, including . . . utility workers" (emphasis added).
            As a lineman for an electricity utility, Stacy's job fell within the scope of the "COVID-19 essential services" urged to remain open.  Accordingly, while most people in the Commonwealth were sheltered in the relative safety of their residences and ordered to be socially distanced, Stacy and his coworkers continued to work side by side and travel in pairs, cabined together in a truck, to worksites to maintain, ensure, or restore a reliable supply of electric power.
            Eventually, as the Commonwealth slowly began to emerge from the state of emergency, the Governor issued orders gradually reopening businesses in four phases.  On May 18, 2020, the Governor signed COVID-19 Order No. 33, which permitted certain businesses, designated "Phase I enterprises," to reopen to the public.  Order No. 33 continued to refer to "COVID-19 Essential Services:  businesses and other organizations providing products and services identified as 'COVID-19 Essential Services' in Exhibit A to COVID-19 Order No. 13."  These essential services, which the Governor had urged to remain open under COVID-19 Order No. 13, were included among the Phase I enterprises.
            On June 6, 2020, the Governor signed COVID-19 Order No. 37, which established a process for businesses classified as "Phase II enterprises" to gradually and permissively reopen subject to limitations.  To implement this gradual reopening, Order No. 37 "rescinded [COVID-19 Order No. 13] effective at 12:01 A.M. on June 8, 2020."  Schedule A to Order No. 37 detailed the types of businesses included in each of Phases I through IV, including, in Phase I, the "[b]usinesses and other organizations providing products and services identified as 'COVID-19 Essential Services' in COVID-19 Order No. 13."
            In February 2021, while COVID-19 Order No. 37 was in place, a series of snowstorms forced Stacy to work overtime.  On February 17, 2021, the lineman who shared Stacy's truck reported feeling unwell and eight of the eleven linemen on Stacy's team tested positive for COVID-19.  Stacy initially tested negative and continued to work.  Four days later, however, Stacy developed COVID-19 symptoms and tested positive.
            Stacy was hospitalized and placed on a ventilator and has also been treated for severe shortness of breath and depression.  He has not been able to return to work.[5]  The parties do not dispute either that Stacy contracted COVID-19 in the course of his employment as a lineman[6] or that Stacy's total disability is related to COVID-19.
            b.  Stacy's workers' compensation claim and administrative appeal.  Stacy sought workers' compensation under the act.  The insurer denied his claim on the basis that the risk of contracting COVID-19 was not inherent in the nature of his employment as a lineman.
            Following an evidentiary hearing, the administrative judge rejected the insurer's conclusion.  The judge explained that, soon after the Governor first declared the state of emergency, all businesses that did not provide "essential services" were required to close their physical workplaces and facilities.  COVID-19 Order No. 13.  By contrast, Stacy was urged to continue to work to provide electricity to the people of the Commonwealth.  As an "essential services" provider, the judge found, Stacy was "sent out to work in an obviously dangerous environment and put at risk of being infected."  To provide these essential services, Stacy "worked shoulder to shoulder" with other linemen and traveled in the cab of a truck with a fellow worker.  Even at the time Stacy contracted COVID-19, when other businesses slowly were permitted to reopen in phases, the risk of infection was so high that gatherings of more than ten people were prohibited.  See COVID-19 Order No. 59.
            Accordingly, the judge found that, under the conditions Stacy faced in early 2021, an inherent danger of infection was essentially characteristic of Stacy's employment.  Because Stacy sustained a compensable personal injury, the judge ordered the insurer to pay temporary total incapacity benefits and to cover related medical expenses.
            The board affirmed the administrative judge's decision, adopting the judge's factual determinations.[7]  The insurer appealed, and we transferred the case from the Appeals Court on our own motion.
            3.  Discussion.  The insurer contends that risk of contracting COVID-19 was not inherent in the worker's employment because "[w]orking as a lineman does not present an environment where the danger of acquiring COVID-19 essentially lurks."  Consideration of the extraordinary circumstances of the worker's exposure as an essential services provider during the state of emergency was, in the insurer's view, impermissible.[8]
            a.  Standard of review.  Our review of the board's decision is limited to determining whether the decision was arbitrary or capricious, or otherwise not in accordance with law.  G. L. c. 152, § 12 (2); G. L. c. 30A, § 14 (7) (g).  See Wadsworth's Case, 461 Mass. 675, 679 (2012) ("We review a board's decision regarding workers' compensation benefits under the usual standard for appeal from a final decision of an administrative agency set forth in G. L. c. 30A, § 14 [7], except that we do not review whether the board's decision was supported by substantial evidence").  A decision is not arbitrary or capricious if it has "adequate evidentiary and factual support and disclos[es] reasoned decision making" consistent with the workers' compensation act.  Scheffler's Case, 419 Mass. 251, 258 (1994).
            b.  Board's decision was not arbitrary or capricious.  The board's decision affirming the administrative judge's factual determination that, at the time he was infected, the risk Stacy would contract COVID-19 was essentially characteristic of his employment was not arbitrary or capricious, or otherwise contrary to law.  The board reasonably considered that Stacy's job was one of the few "essential services" urged by the Governor to continue at a time when the risk of infection through close contact with others was high.  Nearly all businesses in the Commonwealth initially were shuttered.  And even after the Governor permitted a phased reopening of certain nonessential businesses, gatherings of more than ten persons were prohibited.  Yet, Stacy's job required him to work side by side with fellow employees and to spend time in a truck cab with a coworker; these essentially characteristic aspects of his employment increased the likelihood of contracting COVID-19.  Based on the evidentiary record, the board determined that, at the time Stacy contracted COVID-19, the nature of Stacy's employment -- as a lineman, an essential services provider urged to remain on the job -- exposed him to a risk of contracting the infectious disease not shared by most occupations in the Commonwealth.
            For these reasons, as the board explained, its conclusion that Stacy suffered a compensable personal injury is not at odds with its decision in Lussier v. Sadler Bros., 12 Mass. Workers' Comp. Rep. 451 (1998).  In Lussier, a machine operator contracted tuberculosis from an infected coworker.  Id.  The board denied benefits because it found "the danger of exposure to germs from co-employees while working in close contact is a condition common and necessary to a great many occupations."  Id. at 453.  "[T]uberculosis [was not] 'essentially characteristic' of the employee's machine operator job."  Id. at 452.  Here, the board distinguished Lussier, explaining that "a global pandemic . . . with government-imposed restrictions on business operations" was not comparable to the danger considered in Lussier.  Stacy's job required him to work side by side with fellow workers and thereby risk exposure to the airborne virus in a manner that was not common to all or a great many others who worked in occupations that were performed from the relative safety of their homes.[9]  See supra.[10]
            In these circumstances, and applying our limited standard of review, we cannot disturb the board's decision affirming the administrative judge's factual determination that the risk of contracting COVID-19 was inherent in Stacy's employment as a lineman at the time he contracted the disease.  Perron's Case, 325 Mass. at 9.  Accordingly, we affirm.
So ordered.
 
footnotes

 
            [1] We acknowledge the amicus brief submitted by the American Property Casualty Insurance Association.
            [2] In this context, "hazard" is "a danger or risk lurking in a situation which by chance or fortuity develops into an active agency of harm."  Hough v. Contributory Retirement Appeal Bd., 309 Mass. 534, 539 (1941).  See also Perron's Case, 325 Mass. 6, 9 (1949).
            [3] The Legislature adopted the provision extending workers' compensation to cover infectious or contagious diseases in 1941, St. 1941, c. 437, in response to our decision in Smith's Case, in which we concluded that "tuberculosis contracted by the inhalation of germs was a disease and not a personal injury within the meaning of the [workers'] compensation act."  Perron's Case, 325 Mass. at 8, citing Smith's Case, 307 Mass. 516 (1940).  The purpose of the 1941 amendment was "to bring infectious and contagious diseases within the coverage of the act" where the circumstances of the employee's work meet the specified criterion.  Zerofski's Case, 385 Mass. at 595 n.5.
            [4] We summarize the facts as found by the Department of Industrial Accidents administrative judge and adopted by the board.  See Zerofski's Case, 385 Mass. at 591.
            [5] On May 28, 2021, the Governor issued COVID-19 Order No. 69.  The parties agree that Order No. 69 terminated the state of emergency and rescinded all other COVID-19 Orders effective June 15, 2021.
            [6] The evidence before the administrative judge included a physician report concluding that Stacy contracted COVID-19 from exposure in the course of his employment.
            7 The board "shall reverse the decision of an administrative judge only if it determines that such administrative judge's decision is beyond the scope of his authority, arbitrary or capricious, or contrary to law."  G. L. c. 152, § 11C.
            8 The insurer asserts that the board's decision was "ultra vires."  However, the crux of the insurer's claim is not that the board lacked authority to decide the issue raised but that the board was wrong.  We review such a challenge to determine whether the board's decision was arbitrary or capricious, or otherwise not in accordance with law.  See G. L. c. 152, § 12 (2); G. L. c. 30A, § 14 (7) (g).
            9 For the same reasons, the board's decision in Raimo v. DeIulis Bros. Constr. Co., 5 Mass. Workers' Comp. Rep. 201 (1991), is not to the contrary.  There, the board considered a claim by a mason whose work outside in the winter aggravated an infection and caused the worker to develop "extensive bilateral pneumococcal pneumonia with fever and sepsis."  Id. at 202.  The board concluded that "exposure to the elements -- cold, rain, snow, sleet, wind, heat, sun and humidity -- is an everyday fact of life and labor."  Id. at 204.  As such, the board held, "such exposure is an identifiable condition common and necessary to a great many occupations" and the employee therefore did not suffer a compensable injury.  Id. at 204-205.
            10 The insurer's challenge to the administrative judge's finding that the worker was considered "essential" under the Governor's executive orders at the time he contracted COVID-19 in February 2021 fares no better.  Contrary to the insurer's argument, COVID-19 Order No. 37, which was in place when Stacy contracted COVID-19, did not negate his status as an essential worker.  The board found, correctly, that Order No. 37 "is replete with references to [Order No. 13] and can only be understood in the context of that order."