DONNA ADAMS vs. CONTRIBUTORY RETIREMENT APPEAL
BOARD; TOWN OF WAREHAM, intervener.

No. 91-P-449.

Suffolk. March 6, 1992. - August 13, 1992.

Present: KASS, SMITH, & FINE, JJ.

Further appellate review granted, 413 Mass. 1106 (1992),

*Retirement. Administrative Law*, Findings, Proceedings before agency.
*Public Employment*, Accidental disability retirement.

Where the Contributory Retirement Appeal Board failed to respond, on
    remand, to the court's request for amplification of its finding that a
    teacher's back injury had been brought on by the birth and care of her
    child, this court took as established a more readily apparent conclusion,
    namely, that her activities in the workplace were the natural and proxi-
    mate cause of the injury. [175-176]
In an action for judicial review of a decision of the Contributory Retire-
    ment Appeal Board, denying a third-grade teacher's claim for disability
    retirement benefits under G. L. c. 32, § 7 (1), a judge of the Superior
    Court correctly concluded that the plaintiff was entitled to benefits,
    where the record showed that the constant bending required by her
    teaching duties exposed her to an identifiable condition not common or
    necessary to most occupations and, thus, that her back injury was the
    proximate result of job conditions distinct from the wear and tear of
    ordinary physical demands. [176-177] SMITH, J., dissenting.

CIVIL ACTION commenced in the Superior Court Depart-
ment on June 26, 1986.

After review reported in 26 Mass. App. Ct. 1032 (1989)
and after further proceedings before the Contributory Retire-
ment Appeal Board, the case was heard by *Guy Volterra*, J.,
on a motion for summary judgment.

*Mark P. Sutliff,* Assistant Attorney General, for the
defendant.

*Charles M. Healey, III (Sandra C. Quinn* with him) for
the plaintiff.

*Leonard Kopelman,* Town Counsel, *& Richard J. Fallon,*
for the intervener, submitted a brief.

KASS, J. Donna Adams, a school teacher in Wareham, applied to the Teachers' Retirement Board for disability retirement "by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, [her] duties." G. L. c. 32, § 7(1), as appearing in St. 1982, c. 630, § 18. Her case has been in this court before. See *Adams v. Contributory Retirement Appeal Bd.*, 26 Mass. App. Ct. 1032 (1989) (*Adams I*).

In considering whether the disability Donna Ádams suffered was work related, it is useful to rehearse the principles governing what constitutes a compensable injury in the related area of workers' compensation. See *Blanchette v. Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 485 (1985). Those principles were restated in *Zerofski's Case*, 385 Mass. 590, 594-595 (1982):

> "The line between compensable injury and mere 'wear and tear' is a delicate one . . . . Nevertheless, the distinction is necessary to preserve the basic character of the act . . . . To be compensable, injury must arise 'out of' as well as 'in the course of' employment . . . . To be compensable, the harm must arise either from a specific incident or series of incidents at work, or from an identifiable condition that is not common and necessary to all or a great many occupations. The injury need not be unique to the trade, and need not, of course, result from the fault of the employer. But it must, in the sense we have described, be identified with the employment."

In *Zerofski's Case*, years of standing and walking at work did not meet the statutory requirement because standing and walking are common to a great many occupations.

As in the earlier appeal, *Adams I*, the Contributory Retirement Appeal Board (CRAB) denied the application of Adams for disability retirement; Adams took an appeal from that administrative agency to the Superior Court under G. L. c. 30A, § 14(7); and a judge of that court ruled that CRAB had incorrectly applied the *Zerofski* principles. Conse-

quently, the judge determined, CRAB had acted arbitrarily and capriciously and ordered payment of disability benefits to Adams. From a judgment entered accordingly, CRAB has again appealed. We affirm the judgment of the Superior Court ordering retirement benefits.

The burden carried by a claimant for disability retirement, such as Adams, breaks down into two interrelated factors: (1) Did something which happened in the workplace cause the injury? (2) Assuming that connection, if the cause was not a specific or series of specific incidents, could what happened in the workplace be differentiated from conditions and physical demands that are common and necessary to all or a great many occupations? As to the causation factor, see *Campbell* v. *Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1018, 1018-1019 (1984); *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 485; as to distinctive factors in the work place, see *Zerofski's Case*, 385 Mass. at 594-595; *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487.

At this juncture, it is helpful to summarize the findings of an administrative magistrate of the Division of Administrative Law Appeals, which CRAB in large measure adopted.[1]

---

[1]Over the course of *Adams I*, CRAB had adopted the administrative magistrate's findings in their entirety. Our opinion in *Adams I*, 26 Mass. App. Ct. at 1034, called to attention that CRAB's ultimate finding of causation was inconsistent with the magistrate's findings. After remand, CRAB, upon reexamination of the case without further hearings, rejected the magistrate's findings 31, 37, and 38. Finding 31 is not pertinent to the analysis we are called upon to make. Finding 37 simply reported that the regional medical panel (see G.L. c. 32, § 6[3]) had determined that Adams's teaching activities "might be the natural and proximate cause of her disability . . . ." That is almost precisely what the medical board wrote in its report to the Teachers' Retirement Board, namely, "We feel that it is likely that her current incapacity is the natural and proximate result of the events as she described them at her workplace as a teacher. We do not feel that her current functional impairment was caused by any other problem other than as she claims it to be." On the record, therefore, CRAB was clearly in error in rejecting finding 37; apparently CRAB confused what the medical board had reported, an objective fact, with the validity of that report, about which there could be a difference of opinion. Finding 38 was that Adams's preexisting physical condition had been aggravated by what

Adams had been employed by Wareham as a third-grade teacher for approximately fourteen years before severe back pain prevented her from working. Her duties as a teacher required her to help her young pupils to tie their shoes, to fasten their belts, and to put on their boots, to help them with their lunches, to break up fights between them, and to run after children and fetch them back when they wandered toward nearby unguarded railroad tracks. In addition to walking and standing, Adams's work required frequent bending to deal with third-grade children.

As a child, Adams had suffered a bout of poliomyelitis which caused paralysis of her left leg and required her to walk with the aid of a long leg brace. That compounded a club foot difficulty with the same leg which Adams had experienced since birth. In January, 1980, Adams delivered a child by Caesarian section. She experienced no back pain in caring for her baby. In the fall of 1980, Adams resumed teaching and in February, 1981, began to experience back pain. No particular incident triggered the onset of her pain. After a medically prescribed period of bed rest, Adams returned to the classroom half days but soon suffered back pain again. A series of medical consultations and therapies followed, none of which succeeded in alleviating Adams's back problem. It was the opinion of Dr. William W. Tomford, an orthopedic surgeon at Massachusetts General Hospital, that a return to work would exacerbate her pain. Adams applied for disability retirement.

The Teachers' Retirement Board rejected Adams's application and she appealed to CRAB. The hearing magistrate concluded that Adams's "pre-existing condition of residuals from childhood polio was aggravated by the continual standing, bending and moving about activities involved in her teaching work to produce her disabling back condition." Applying the *Zerofski* test, the hearing magistrate found "that Ms. Adams's particular regime does not reflect an activity level commmon or necessary to daily life or to all employ-

she was required to do in the course of her teaching duties. We shall discuss that finding in the main body of the opinion.

ment . . . her regime of activity involves physical move-
ments and exertions which are dependent upon whatever the
situation demanded to insure proper care for the young chil-
dren." The magistrate recommended that benefits be
awarded.

When we reviewed the administrative record in *Adams I*,
we questioned whether there was support for CRAB's find-
ings "that in all likelihood [the plaintiff's] medical problems
were brought on by the care and birth of her child." *Adams
I* at 1034. We ordered that the case be remanded to CRAB
so that it might explain why it thought the record tied Ad-
ams's disability to the birth and care of her child. Our opin-
ion requested the board to refer to the evidence on which it
had relied to arrive at its ultimate finding about the cause of
Adams's disability.

CRAB chose not to hold further hearings (nor was it re-
quired so to do). As recited in note 1, *supra*, CRAB, in its
response after remand, disavowed acceptance of finding 38
of the administrative magistrate, which had tied the claim-
ant's disability to the standing, bending, and moving about
activities involved in Adams's teaching work. The board did
not, however, explain the basis of its earlier conclusion that
the birth and care of her child had brought on Adams's back
injury. There was absent from CRAB's response to *Adams I*
any reference to evidence to support the birth and child care
causation hypothesis. Rather, CRAB shifted ground on cau-
sation altogether in its decision filed after remand, this time
finding the causes of *Adams's* injury in her birth defect and
in her childhood poliomyelitis. The failure to respond to our
inquiries in *Adams I* about causation works something re-
sembling a waiver by the agency of the causation issue.
When faced, after remand, with a failure by an administra-
tive agency to respond to a request to furnish a reasoned ba-
sis for the agency's conclusion, a reviewing court may come
to a more readily apparent conclusion. See *Marshall* v. *Lan-
sing*, 839 F.2d 933, 945 (3d Cir. 1988). We, therefore, take
as established in this case that her activities in the workplace
were the natural and proximate cause of Adams's back in-

jury. Cf. *Morris* v. *Board of Registration in Med.*, 405 Mass. 103, 112-113 (1989).

It remains to consider the second question we put to CRAB in *Adams I* at 1035: whether Adams's job requirements as an elementary school teacher subjected her to an identifiable condition not common and necessary to all or a great many occupations; i.e., to apply the principles restated in *Zerofski's Case*, 385 Mass. at 594-595. We asked for the benefit of the board's views in light of its "experience in the area and its function in applying the controlling statute, necessarily on a case-by-case basis, to a difficult area of the law." *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487.

CRAB responded that Adams's injury resulted from the "wear and tear" of physical demands which she would have experienced in any number of occupations. As examples of occupations which required persons to stand, walk or bend, CRAB cited: "homemakers, doctors, nurses, waiters, chefs, laborers, patrolmen, correctional officers, janitors, tradesmen, watchmen, salespersons, metermaids, baseball players and umpires."

Yet baseball players surely (to choose the most obvious example from CRAB's list) meet exceptional physical demands; if they do not, society overpays them. The point is that recovery under G. L. c. 32, § 7(1), does not require that an identifiable condition on the job be unique to a particular occupation. *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. at 487 n.7. It is necessary to establish that the injury arose out of an identifiable exertion which the employee occupationally is called upon to make and which can be thought to have caused injury to the employee for reasons other than that the employee just wearing out — as we all do. Some of the other occupations listed by CRAB illustrate the point. A doctor, nurse, waiter, or chef obliged to engage in exceptional and frequent bending or other assumption of a strenuous posture is exposed to a condition of employment not common and necessary to all or a great many occupations. The connection between bending and

backache has been recognized in this context. See *Mc-Manus's Case*, 328 Mass. 171, 173 (1951); *Zerofski's Case*, 385 Mass. at 593.

Frequency and intensity of activity compared to other occupations are factors in deciding whether the activity will support a claim for benefits after injury. The lines of distinction, as we have observed, are delicate, *Zerofski's Case*, 385 Mass. at 594. As an initial matter the drawing of the lines is a task for the administrative agency, and the agency's determination is entitled to the usual deference. Ultimately, though, the line is for a court to draw as it did in *Zerofski*, at 595. Cf. *Massachusetts Retired Police & Firefighters Assn., Inc.* v. *Retirement Bd. of Belmont*, 15 Mass. App. Ct. 212, 217 (1983). That is particularly so when the agency disregards the findings of its hearing officer and offers no reasoned analysis for having come to the opposite conclusion. See *Morris* v. *Board of Registration in Med.*, 405 Mass. at 112-113. We are of opinion that Adams's duties exposed her to an identifiable condition which is not common to most occupations. Bending may be common to everyday life and, to a certain degree, the teaching profession. Bending to help or grapple with some thirty wriggling third graders is not as commonplace. Constant bending over because of the size of the children Adams taught distinguishes her work not only from other occupations, but other teaching. In addition to the thirty or so students in her classroom, Adams was required to monitor between 660 and 800 small students at recess or lunch, times when her young charges were particularly likely to mount physical challenges. This was bending which was deeper, more frequent, and more intense than that which would be expected in the general run of occupations.

As her injury was the natural and proximate result of a job condition which is identifiably distinct, Adams is entitled to disability benefits under G. L. c. 32, § 7(1).

*Judgment affirmed.*

SMITH, J. (dissenting). The law is clear. An applicant for accidental disability retirement under G. L. c. 32, § 7(1), as appearing in St. 1982, c. 630, § 18, must prove permanent and total disability "by reason of a personal injury sustained or a hazard undergone as a result of and while in the performance of, his duties at some definite place and at some definite time." To succeed, the applicant must prove that the disability arose (1) "either from a specific incident or series of incidents at work," or (2) from gradual deterioration, caused not by wear and tear but rather "from an identifiable condition that is not common and necessary to all or a great many occupations." *Zerofski's Case*, 385 Mass. 590, 594-595 (1982). "Proof of either hypothesis ha[s] to satisfy the strict causation standard imposed by the controlling statute: that the [applicant's] employment was 'a natural and proximate cause of the incapacity.'" *Blanchette v. Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 485 (1985).

The fact that an applicant, such as Adams, may have a preexisting medical condition does not bar recovery or lessen or increase his or her burden. He or she still must establish that the preexisting condition was aggravated by a specific incident or series of incidents at work, or by gradual deterioration, other than wear and tear. *Zerofski's Case*, 385 Mass. at 592-593. However, "when work is merely a contributing cause of the injury the 'natural and proximate result' test for causation necessary to the recovery of accidental disability retirement benefits under G. L. c. 32, § 7(1), has not been satisfied." *Blanchette v. Contributory Retirement Appeal Bd.*, *supra* at 487, quoting from *Campbell v. Contributory Retirement Appeal Bd.*, 17 Mass. App. Ct. 1018 (1984). The fact that we remanded this case to CRAB for further proceedings does not, in any way, lessen Adams's burden.

I agree with the majority that the line between compensable injury and mere "wear and tear" is a delicate one. Moreover, I agree that "[f]requency and intensity of activity compared to other occupations are factors in deciding whether the activity will support a claim for benefits after injury."

However, on each occasion where those factors were considered, the decision denied recovery because the injury resulted from mere wear and tear. See *Burns's Case*, 266 Mass. 516 (1929) (watchman denied recovery where his heart failure was due to the aggravating effect of miles of nightly walking upon a preexisting heart condition); *Pimental's Case*, 235 Mass. 598 (1920) (recovery denied where years of sitting with poor posture to roll cigars caused nerve disorder); *Spalla's Case*, 320 Mass. 416, 418 (1946) (evidence that years of hard labor weakened abdominal walls insufficient to permit recovery).

Here, the majority identifies the condition in Adams's employment that is not common and necessary to all or a great many occupations to be "bending which was deeper, more frequent, and more intense than that which would be expected in the general run of occupations." The majority do not cite a single decision which holds that "bending" of the magnitude it describes is an identifiable condition that would permit this applicant to receive accidental disability.[1] Moreover, the opinion fails to mention the considerable number of decisions in which the court concluded that the gradual deterioration was caused by "wear and tear." See *Zerofski's Case*, 385 Mass. at 593-595.

This case is remarkably similar to *Blanchette* v. *Contributory Retirement Appeal Bd.*, *supra*, in which this court in affirming CRAB's denial of an application for accidental retirement benefits, stated, "In upholding the decicion of [CRAB] we have given consideration to: . . . the board's experience in the area and its function in applying the controlling statute, necessarily on a case-by-case basis, to a difficult area of the law; and . . . [CRAB's] prerogative in this case . . . to decide the probative value of the evidence, and to reject the opinion of an essential medical expert which was,

---

[1]In *McManus's Case*, 328 Mass. 171 (1951), cited by the majority in a different context, the employee was injured when he bent over to pick up a hose. The injury, therefore, arose from a specific incident and not from gradual deterioration caused by frequent bending.

at best, equivocal . . . ." 20 Mass. App. Ct. at 487-488.
That language is particularly appropriate to this matter.
    I respectfully dissent.