DONNA ADAMS *vs.* CONTRIBUTORY RETIREMENT APPEAL
BOARD; TOWN OF WAREHAM, intervener.

Suffolk. January 7, 1993. - February 19, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Retirement. Public Employment*, Accidental disability retirement. *Administrative Law*, Findings, Proceedings before agency.

The Contributory Retirement Appeal Board correctly determined that an elementary school teacher did not demonstrate entitlement to accidental disability retirement benefits, where the board had properly concluded that the applicant's back injuries arose from the "wear and tear" of ordinary physical demands, and not "from a specific incident or series of incidents at work, or from an identifiable condition that is not common or necessary to all or a great many occupations." [365-367]

CIVIL ACTION commenced in the Superior Court Department on June 26, 1986.

The case was heard by *Guy Volterra*, J., on a motion for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Mark P. Sutliff*, Assistant Attorney General, for the defendant.

*Ira Fader* (*Charles M. Healey, III*, with him) for the plaintiff.

GREANEY, J. In this case, a divided panel of the Appeals Court affirmed a judgment of the Superior Court that decided that the Contributory Retirement Appeal Board (CRAB) had wrongly denied the plaintiff, Donna Adams, accidental disability retirement benefits pursuant to G. L. c. 32, § 7 (1), as appearing in St. 1982, c. 630, § 18. See *Adams* v. *Contributory Retirement Appeal Bd.*, 33 Mass. App. Ct. 171

(1992). We granted CRAB's application for further appellate review. We conclude that CRAB correctly determined that the plaintiff had not demonstrated her entitlement to accidental disability retirement benefits. Consequently, we reverse the judgment of the Superior Court and direct the entry of a judgment affirming CRAB's decision.

The pertinent background of the case is as follows. In 1967, the plaintiff became employed as an elementary school teacher in Wareham. Her responsibilities included teaching students at the third grade level, classroom management and discipline, monitoring recess and lunch periods, and performing bus duty. During recess periods, the plaintiff was responsible for preventing students from wandering onto railroad tracks near the school yard and for breaking up occasional fights among students. Her responsibilities entailed continual periods of walking and standing and frequent bending over to assist students in a variety of tasks.

Examining physicians considered the plaintiff's medical history to be a contributing factor to the disabling back pain that forced her to cease working.[1] At the age of nine, the plaintiff suffered a bout of poliomyelitis which left her with paralysis and residual weakness of her left leg. As a result the plaintiff wears a leg brace. She was also born with a club right foot which had been treated. In January, 1980, the plaintiff took leave from her job to deliver her first child. While the plaintiff was on leave her treating physician found that she suffers from mild scoliosis of her back due to her childhood polio.

The plaintiff returned to her job in September, 1980, and remained until early February, 1981, when she developed

---

[1]Under G. L. c. 32, § 7, an employee may recover for a disabling injury even though that injury is due in part to physical weaknesses peculiar to the claimant. See *Zerofski's Case*, 385 Mass. 590, 593 (1982); *Brzozowski's Case*, 328 Mass. 113 (1951). These cases arise under the Workers' Compensation Act, G. L. c. 152. However, it is settled that the term "personal injury," as it appears in G. L. c. 32, § 7, should be interpreted similarly to the same term in G. L. c. 152. *Baruffaldi* v. *Contributory Retirement Appeal Bd.*, 337 Mass. 495, 500-501 (1958). *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 482 (1985).

significant back pain. After a consultation with her physician, the plaintiff was advised not to work. The plaintiff returned to work on a part-time basis in May, 1981, but was unable to remain due to the back pain she was experiencing. She was treated by a second doctor, who opined that a possible cause of the plaintiff's back pain was a disc problem. When the second physician recommended surgery, the plaintiff consulted a third doctor, who diagnosed either disc herniation or arthritis in the lower back joints.

The plaintiff submitted an application for accidental disability retirement in August, 1984, to the Teachers' Retirement Board. A third doctor completed the physician's statement portion of the application and certified that the plaintiff was substantially unable to perform her duties and that the disability was likely to be permanent. In response to the question on the medical certificate as to whether the disability was the natural and proximate result of the accident or hazard undergone on account of which retirement was claimed, the doctor answered neither "yes" nor "no," stating instead "[a] combination."

A medical panel, convened pursuant to G. L. c. 32, §§ 6 (3) and 7 (1) (1990 ed.), certified that the plaintiff was permanently disabled from performing her duties as a school teacher as a result of a "lumbar insufficiency associated with degenerated lumbar disc at the lowest lumbar level complicated by flail left lower extremity secondary to childhood polio myelitis and associated with right sided club foot, congenital, treated." In response to the question whether the plaintiff's disability was "such as might be the natural and proximate result of the . . . hazard undergone on account of which retirement is claimed," the panel answered "yes." The medical panel chairman attached a letter to the panel certificate in which he stated that the panel members "know of no other event which may have occasioned [the plaintiff's]

trouble." This statement, however, was modified somewhat by the statement set forth in the margin.[2]

The Teachers' Retirement Board denied the plaintiff's application. The plaintiff appealed to CRAB. An administrative magistrate held a hearing at which the plaintiff testified and certain of her medical records were introduced in evidence. The magistrate reviewed the report of the medical panel, made findings, and recommended that the plaintiff be granted accidental disability retirement benefits. CRAB adopted the findings of the magistrate, but upheld the action of the Teachers' Retirement Board, denying the plaintiff's application.

Thereafter, the plaintiff filed a complaint, pursuant to G. L. c. 30A, § 14 (1990 ed.), for judicial review of CRAB's decision. A Superior Court judge vacated CRAB's decision and ordered that accidental disability retirement benefits be granted to the plaintiff. CRAB sought appellate review, and the Appeals Court vacated the Superior Court judgment and remanded the case to CRAB for further proceedings. *Adams* v. *Contributory Retirement Appeal Bd.*, 26 Mass. App. Ct. 1032 (1989) (*Adams I*).[3]

---

[2] "We do know that she had a club foot on the right from childhood which was apparently a birth problem and that at the age of 9 she acquired polio myelitis which left her with a flail left lower extremity. Her left lower extremity is essentially flail and she wears a brace and has worn a brace since the age of 10. She has a short left lower extremity and a level pelvis when wearing special shoes and her brace. While this coupled with bending over and teaching small children could be a contributing factor, it is a question of apportionment and the question in Section K [pertaining to whether the disability is work-related] is phrased with the word 'might.' Therefore, we answered yes."

[3] In *Adams I*, the Appeals Court concluded that CRAB's decision contained an inconsistency on the issue of causation. CRAB had adopted the findings of the administrative magistrate which included a finding (no. 38), that the plaintiff's work as a teacher caused her disability insofar as the "pre-existing condition of residuals from childhood polio was aggravated by the continual standing, bending and moving about activities involved in her teaching work to produce her disabling back condition." CRAB also made a new finding: "that in all likelihood [the plaintiff's] medical problems were brought on by the care and birth of her child." *Id.* at 1033. The Appeals Court concluded that (1) it was unclear whether there was

After remand, CRAB again denied the accidental disability retirement benefits sought by the plaintiff.[4] The plaintiff filed an amended complaint under G. L. c. 30A, § 14, for judicial review of CRAB's decision after remand. The same judge of the Superior Court who had handled the initial case vacated CRAB's decision and ordered that the plaintiff receive accidental disability retirement benefits. CRAB again sought appellate review, and, as has been indicated, a divided panel of the Appeals Court upheld the decision of the Superior Court. The Appeals Court did so on the basis that the plaintiff's job duties as an elementary school teacher subjected her to an identifiable condition not common and necessary to a great many occupations.[5] *Adams* v. *Contributory*

support for the finding that the birth and care of the plaintiff's child was the likely cause of her disability; and (2) CRAB should have decided the legal question whether the plaintiff's job requirements as an elementary school teacher subjected her to an identifiable condition "not common and necessary to all or a great many occupations." Remand was ordered to clear up these problems. *Adams I, supra* at 1034-1036.

[4]On remand, CRAB did not hold a further hearing (and was not required to do so). CRAB did not resolve the question whether adequate support existed for the finding it had previously made that the birth and care of the plaintiff's child was the direct cause of her disability. Instead, CRAB concluded (1) that the plaintiff's injury resulted from the "wear and tear" of physical demands common to a great many occupations, and (2) that the medical evidence was too equivocal on the issue of causation to warrant a conclusion that the plaintiff had satisfied what CRAB described as "the strict causation standard imposed by [§] 7 of [G. L. c.] 32."

[5]The Appeals Court noted that CRAB on remand had not explained the basis of its earlier decision that the birth and care of the plaintiff's child had brought on her back injury. *Adams* v. *Contributory Retirement Appeals Bd.*, 33 Mass. App. Ct. 171, 175 (1992). The Appeals Court considered that CRAB's failure to deal with the issue "work[ed] something resembling a waiver by the agency of the causation issue," *id.*, and that court took "as established in this case that [the plaintiff's] activities in the workplace were the natural and proximate cause of [her] back injury." *Id.* at 175-176.

We think by not dealing with the issue of direct causation, CRAB has implicitly acknowledged that there is no support for causation being attributed to the birth and care of the plaintiff's child. CRAB should have expressly acknowledged this. We would not, however, go so far as the Appeals Court in taking causation in fact as established. The second ground on remand relied upon by CRAB, see note 4, *supra*, expressed its view that

*Retirement Appeal Bd.*, 33 Mass. App. Ct. 171, 176-177 (1992) (*Adams II*).

To qualify for accidental disability retirement benefits under G. L. c. 32, § 7 (1), an applicant must prove permanent and total disability "by reason of a personal injury sustained or a hazard undergone as a result of, and while in the performance of, his duties at some definite place and at some definite time."[6] We conclude that the facts and medical evidence could reasonably have been viewed by CRAB as failing to establish an entitlement under this statute to accidental disability retirement benefits. In order to succeed on her application, the plaintiff had to prove that her disability arose "either from a specific incident or series of incidents at work, or from an identifiable condition that is not common and necessary to all or a great many occupations" (footnote omitted). *Zerofski's Case*, 385 Mass. 590, 595 (1982). *Kelly's Case*, 394 Mass. 684, 688 (1985). The second method of proof is the one in issue here.

It is not enough for an applicant to show that his or her daily duties are unique to the job because all jobs have their own special characteristics. The Appeals Court correctly noted that "[f]requency and intensity of activity compared to other occupations," *Adams II, supra* at 177, are the factors that must be relied on in distinguishing between compensable injuries and gradual deterioration, caused by wear and tear, that would be common to many occupations as well as daily

---

the plaintiff had not clearly proved causation. Here CRAB is saying, as it properly may, that the medical evidence in the case may not be entitled to great weight because it is equivocal. See *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 488 (1985). We will, however, assume that the plaintiff's disability was work-caused because we think that the plaintiff's case is more appropriately resolved on the first ground relied on by CRAB. That ground was directly responsive to the Appeals Court's remand order. See *Zerofski's Case*, 385 Mass. 590, 594 (1982) (where work may be contributing cause of injury, but only to extent that many activities pursued in its place could have contributed, causation in fact is an inadequate test).

[6]The "hazard undergone" prong of the statute is not involved in this case.

life, and which is not compensable. See *Adams II, supra* at 178 (Smith, J., dissenting).

The administrative magistrate found that the plaintiff's duties involved "frequent walking, standing and bending over." CRAB noted that the physical activities required of the plaintiff in her job could not be distinguished from the activities required in a wide variety of other occupations and gave a list of examples to illustrate its point, observing, quite correctly, that the list could have been considerably longer. Relying on *Zerofski's Case, supra,* CRAB suggested that back problems in occupations involving frequent walking, standing and bending were typically the result of "wear and tear." This suggestion reflects the point that job duties involving common movements done frequently by many humans both in and out of work will not be sufficient to establish an entitlement under G. L. c. 32, § 7 (1), in order to preserve the policy behind the statute which differentiates between work-related personal injuries for which the Commonwealth should bear responsibility, and other injuries which should more properly be covered by personal health insurance. See *Zerofski's Case, supra* at 594. An undue blurring of the line between the two classes of injuries, based on an enlargement of recovery when the injury stems from a long period of common movements, would substantially erode, if not eliminate, the policy and would tend, for all practical purposes, to turn G. L. c. 32, § 7 (1), into a "scheme for health insurance." *Maggelet's Case,* 228 Mass. 57, 61 (1917).

We agree with CRAB that the plaintiff's case falls on the side of "wear and tear." We have held that "[p]rolonged standing and walking are simply too common among necessary human activities to constitute identifiable conditions of employment." *Zerofski's Case, supra* at 596. We do not consider the plaintiff's case materially improved by the additional factor that her work involved frequent "bending over." That movement also is common to necessary human activities and to many jobs. We view the plaintiff's case as analytically similar to those cases in which recovery was denied be-

cause the disability resulted from wear and tear despite the employee's having engaged in a lengthy period of frequent activity. See *Spalla's Case*, 320 Mass. 416 (1946) (no compensable injury where evidence demonstrated only that employee's abdominal muscles had become attenuated from years of working in a foundry); *Doyle's Case*, 269 Mass. 310 (1929) (no compensable injury where evidence showed that employee's back had been weakened by years of physical exertion); *Burns's Case*, 266 Mass. 516 (1929) (compensation denied for heart deterioration caused in part by walking up and down stairs). See also *Blanchette* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 479, 487 (1985) (mental and emotional stresses of job as school custodian, indistinguishable from stresses of other jobs, did not cause compensable injury).[7] In upholding the decision of CRAB, we have given consideration to CRAB's experience in the area and its function in applying the controlling statute, necessarily on a case-by-case basis, to a difficult area of the law as well as to the agency's responsibility to differentiate between the special requirements for other benefits, such as ordinary disability retirement pursuant to G. L. c. 32, § 6 (1). We have also borne in mind where the burden of proof lies. See *Blanchette* v. *Contributory Retirement Appeal Bd.*, *supra.*

The judgment of the Superior Court is reversed, and a new judgment is to be entered affirming the decision of CRAB.

*So ordered.*

---

[7]*McManus's Case*, 328 Mass. 171 (1951), cited by the majority of the Appeals Court panel as a case in which an injury caused by bending was found to be compensable, involved the sudden onset of a disabling condition caused by a specific event. The worker in that case was injured when he bent over to pick up a hose. It thus falls into the class of cases where injury arises from a specific event, and does not support the plaintiff's position in this case.