Toomey, J.
INTRODUCTION
The plaintiff, Joan M. Greece, brought this action pursuant to G.L.c. 30A, Sec. 14 to appeal a decision of the Contributory Retirement Appeal Board (CRAB) denying her application for accidental disability retirement benefits under G.L.c. 32, Sec. 7. For the reasons set forth below, the plaintiffs appeal for relief from that decision is ALLOWED.
BACKGROUND
Joan M. Greece began working as a clerk-typist for Worcester City Hospital in 1968. Her duties included a variety of tasks, such as typing, filing, answering phones, handling small specimen files, and cleaning her work area. On November 16, 1978 Ms. Greece was called by someone while she was cleaning her work area. As she turned to respond, she struck her right elbow on a metal filing cabinet. Due to this injury, Ms. Greece applied for accidental disability retirement benefits pursuant to G.L.c. 32, sec. 7.
Five successive medical panels were convened to evaluate the plaintiffs application for accidental disability retirement. On July 25, 1991, based on the report of the fifth medical panel, the City of Worcester Retirement Board denied the plaintiffs application. Ms. Greece timely appealed that decision. On February 15, 1993, Administrative Magistrate Sarah H. Luick of the Division of Administrative Law Appeals reversed the decision of the City ofWorcester RetirementBoard, thereby granting accidental disability retirement benefits to Ms. Greece. CRAB determined, on its own volition, to review Administrative Luick’s February 15, 1993 decision and, in a decision dated June 25, 1993, affirmed the ruling of the City of Worcester Retirement Board. Employing a conjunctive construction of G.L.c. 32, sec. 7(1), CRAB concluded that, because Ms. Greece’s injury resulted from a movement (to wit, turning) “common to necessary human activities and to many jobs,” she was not entitled to accidental disability retirement benefits. (Adm. Rec. at 2). In accordance with G.L.c. 30A, Sec. 14, Ms. Greece has now sought judicial review of CRAB’s decision.
DISCUSSION
I. Standard of Review
The State Administrative Procedure Act, G.L.c. 30A, limits this court’s review to determining whether CRAB’s decision was (1) in violation of constitutional provisions; (2) in excess of the Board’s authority or jurisdiction; (3) based on an error of law; (4) made upon unlawful procedure; (5) unsupported by substantial evidence; (6) unwarranted by facts found by the court on the record; or (7) arbitrary or capricious, an abuse of discretion, or “otherwise not in accordance with the law.” G.L.c. 30A, Sec. 14(7)(a) — (g). The court has the power to affirm, reverse, remand, compel action or modify a state administrative agency’s decision as to which it has the authority to review. G.L.c. 30A, Sec. 14(7).
II. Analysis
G.L.c. 32, Sec. 7(1) allows a qualifying employee “who becomes totally and permanently incapacitated ... by reason of a personal injury sustained or a hazard undergone as a result of and while in the performance of, his duties at some definite time without serious and willful misconduct on his part *90 . . .’’to receive accidental disability retirement benefits. (Emphasis added.) Thus, Ms. Greece’s entitlement to receive such benefits depends upon whether her elbow injury was received “as a result of, and while in the performance of’ her job duties. I conclude that the case law interpreting that statutory standard clearly supports the plaintiffs argument that, on the facts at bar, she is entitled to receive accidental disability retirement.
In Adams v. Contributory Retirement Appeal Board, 414 Mass. 360 (1993), the court was faced with determining whether an elementary school teacher was entitled to receive accidental disability retirement benefits. Donna Adams’s responsibilities “entailed continual periods of walking and standing and frequent bending over to assist students in a variety of tasks.” Id. at 361. Disabling back pain eventually forced the plaintiff to cease working. Id.[1] The court adopted a disjunctive test for determining whether an employee’s personal injury was received “as a result of, and while in the performance of ’ his duties as required by G.L.c. 32, §7(1). The Adams test compelled the plaintiff to prove that her disability arose “eitherfrom a specific incident or series of incidents at work or from an identifiable condition that is not common and necessary to a great many occupations. ” Id at 365, quoting Zerofski’s Case, 385 Mass. 590, 595 (1982) (emphasis added). See also Kelly’s Case, 394 Mass. 684, 688 (1985) [2]
Because Donna Adams’s disabling back pain was the result of frequent standing, walking, and bending over, her inj ury was plainly not the result of “a specific incident or series of incidents at work.” The court turned, therefore, to the second aspect of the test. In that context, the court concluded that an injury resulting from common movements done frequently by many people both in and out of work environments would not be sufficient to qualify an employee for benefits under G.L.c. 32, Sec. 7(1). Adams, supra at 366. In other words, the Adams plaintiff was not able to show that her personal injury arose from “an identifiable condition that [was] not common and necessary to a great many occupations.” Her injury was the result of “wear and tear” and, having failed also the first aspect of the test, she was held to be unentiüed to accidental disability retirement benefits. Id at 366-67.
The Adams court cited to several cases in which injuries were found to be noncompensable due to the conclusion that the plaintiffs disability had been the result of “wear and tear.” For example, in Burns’s Case, a watchman was denied benefits for his heart deterioration which had partly been the result of his having to continuously walk up and down stairs. Burns’s Case, 266 Mass. 516 (1929). Likewise, in Doyle’s Case, an employee was denied compensation for his back which had been weakened by extensive and continuous physical activity. Doyle’s Case, 269 Mass. 310 (1929). See also Spalla’s Case, 320 Mass. 416 (1946) (employee denied compensation despite the fact that his muscles had been strained from years of working in a foundry); Pimental’s Case, 235 Mass. 598 (1920) (employee suffering from nerve disorder caused by years of sitting with poor posture denied benefits).[3]
Such injuries which are the result of “wear and tear,” must be distinguished, however, from disabilities which arise from “a specific incident or series of incidents at work.” McManus’s Case, 328 Mass. 171 (1951), involved an employee who suffered a back strain as he bent over to pick up the hose of a vacuum cleaner which he was using in his work. The court determined that the employee suffered an injury “arising out of and in the course of his employment,” and was therefore entitled to worker’s compensation benefits. Id at 172. Although McManus was decided more than 30 years before Zerofski’s Case, the decision which established the Adams test, the court in Adams noted that McManus's Case “. . . involved the sudden onset of a disabling condition caused by a specific event. The worker was injured when he bent over to pick up a hose. It IMcManus’s Case] thus falls into the class of cases where injury arises from a specific event.” Adams, supra, at 367 n.7. The court in Adams may therefore be regarded as suggesting that, if it were confronted with the facts of McManus’s Case, McManus’s injury would be characterized as one arising from “a specific incident at work” consonant with the first aspect of the controlling test.
The facts surrounding Ms. Greece’s injury more closely resemble the facts involved in McManus’s Case than they do those presented by Adams. Joan Greece, at work, turned and banged her elbow on a filing cabinet. James McManus, at work, strained his back as he bent over to pick up a hose. Both injuries occurred as a result of a specific, identifiable activity at work. They were not the result of continuous or constant activity, such as frequent walking, standing, or bending over. See Adams, supra at 361. Because Ms. Greece’s injury is, thus, one that can only be characterized as arising from “a specific incident at work,” the fact that “turning” is a movement “common to necessary human activities and to many jobs” (Adm. Rec. at 2) is without consequence. The test borrowed from Zerofski’s Case and applied in Adams to accidental disability retirement benefits did not establish a conjunctive standard. An employee’s injury need simply fall into either of the two categories recognized in Adams in order for the employee to be eligible for benefits under G.L.c. 32, sec. 7(1). Ms. Greece’s injury does indeed fall within one of the categories.
CONCLUSION
The Contributory Retirement Appeal Board focused exclusively on the second aspect of the Adams test.[4] In doing so, CRAB based its decision on an erroneously narrow application of law. CRAB should have examined also whether Ms. Greece’s injury qualified as one arising from “a specific incident at work.” In light of the fact that there is no evidence in the record to indicate that Ms. Greece’s injury was not work-re *91 lated,[5] this court holds that Ms. Greece’s injury does qualify as one arising from “a specific incident at work.” Accordingly, her injury was, ipso facto, “as a result of and while in the performance of her duties,” G.L.c. 32, §7(1), and Ms. Greece is thereby entitled to receive accidental disability retirement benefits.
ORDER
For the foregoing reasons, it is therefore ORDERED that the decision of the Contributory Retirement Appeal Board be REVERSED. It is further ORDERED that this case be REMANDED to the agency for further proceedings consistent with this opinion.

Physicians determined that the plaintiffs past history of back problems was a contributing factor to her disabling back pain. However, under G.L.c. 32, Sec. 7, an employee is entitled to recover for a disabling injury even though that injury is partly the result of the employee’s own physical frailties. See Zerofski's Case, 385 Mass. 590, 593 (1982).

Zerofski’s Case and Kelly’s Case both arose under the Worker’s Compensation Act. G.L.c. 152, Sec. 26 provides worker’s compensation for a qualifying employee who “receives a personal injury arising out of and in the course of his employment. . .” Although the language of G.L.c. 152, Sec. 26 is different from the language of G.L.c. 32, Sec. 7(1) (Accidental Disability Retirement), the court in Adams applied the test established in Zerofski’s Case for worker’s compensation cases to a situation involving accidental disability retirement benefits. Therefore, the tests for worker’s compensation and accidental disability retirement benefits are, in the view of the Supreme Judicial Court, indistinguishable.

It should be noted that these cases involved worker’s compensation, not accidental disability retirement benefits, but, for the reasons suggested in in 2, supra, the distinction is immaterial.

'he second aspect requires the employee to prove that the disability arose “from an identifiable condition that is not common or necessary to a great many occupations.”

 There is no evidence in the record to indicate that the individual who called Ms. Greece did so for a non work-related reason. If the circumstances surrounding Ms. Greece’s injury were not work related, she would not be entitled to accidental disability retirement benefits. See, e.g., Boston Retirement Board v. Contributory Retirement Appeal Board, 340 Mass. 109 (1959) (municipal employee injured while descending a flight of stairs on her lunch break denied accidental disability retirement benefits).