## Aetna Life & Casualty Insurance Company *vs.* Commonwealth.

No. 98-P-957.

Suffolk. June 3, 1999. - November 2, 2000.

Present: Jacobs, Laurence, & Beck, JJ.

*Workers' Compensation Act,* Reimbursement of insurer, Subsequent injury, Injuries to which act applies, Decision of Industrial Accident Reviewing Board. *Administrative Law,* Agency's interpretation of statute.

Discussion of G. L. c. 152, § 37, which requires an insurer to pay workers' compensation benefits to a previously injured employee who suffers a subsequent injury "in the course of and arising out of his employment," and which provides that insurers who make such payments be reimbursed from the Workers' Compensation Trust Fund. [375-377]

A reviewing board of the Department of Industrial Accidents correctly concluded that an employee's back injury was the result of ordinary wear and tear on an already injured back and was not a "subsequent personal injury" sustained "in the course of and arising out of his employment" within the meaning of G. L. c. 152, § 37, as amended by St. 1991, c. 398, § 71; consequently, the Workers' Compensation Trust Fund was not required to reimburse the insurer for workers' compensation benefits the insurer paid to the employee pursuant to a lump sum agreement. [377-379]

Appeal from a decision of the Industrial Accident Reviewing Board.

*W. Frederick Uehlein* for the insurer.

*Paul R. Ingraham,* Special Assistant Attorney General, for the defendant.

Beck, J. The principal question in this case is whether the Workers' Compensation Trust Fund, G. L. c. 152, § 65, must reimburse the insurer, Aetna Life and Casualty Insurance Company, for workers' compensation benefits the insurer paid to Joseph Diliberto (employee) pursuant to a lump sum agreement. G. L. c. 152, § 48. The answer to this question depends upon whether the employee's injury was a "subsequent personal injury" sustained "in the course of and arising out of

his employment" under G. L. c. 152, § 37, as amended by St. 1991, c. 398, § 71, or the result of ordinary wear and tear on an already injured back. The administrative judge, whose findings of fact and determinations of credibility we must credit, see *Bengtson's Case*, 34 Mass. App. Ct. 239, 243 n.7 (1993); Koziol, Massachusetts Workers' Compensation Reform Act § 7.20, at 171 (2000 ed. supplementing Locke, Workmen's Compensation [2d ed. 1987]), determined that the employee had sustained a reimbursable injury. The reviewing board, G. L. c. 152, § 1(8), reversed on the ground that the administrative judge had misconstrued *Zerofski's Case*, 385 Mass. 590 (1982), and therefore his findings were "contrary to law." G. L. c. 152, § 11C. The insurer appealed to a single justice of this court, G. L. c. 152, § 12(2); *Bengtson's Case*, 34 Mass. App. Ct. at 240 n.4, who in turn reported the case to a full panel. *Ibid.* We affirm the decision of the reviewing board.

*Factual background.* The administrative judge found the following facts. The employee was born in 1927 and has a tenth grade education. He worked for his employer, New England Electric, for thirty-two years. For many years, he performed heavy physical work as a laborer, cable man, and rigger. In 1960, he injured his back while trying to lift a boulder away from a gas leak. He reinjured his back in 1967, while lifting some heavy cable. He continued to do heavy work as a rigger until 1976. In 1977 he began doing clerical work. Between 1977 and 1981, he had no back problems because the job allowed him to stand, move around, and sit as he pleased. From 1982 to 1985, the employee worked with a computer, doing billing work. He was able to perform this job despite long periods of sitting because he was allowed to have a five or ten minute break every hour to stand up and to walk around.

On January 7, 1985, the employee felt a sharp pain in his lower back while moving files at work. He was out of work and received compensation until April 23, 1985, when he returned to his clerical work with the added restriction that he not do any filing or bending. As thus further restricted, the employee was able to continue his sedentary job without undue pain until the winter of 1986. At that time, his work load increased in the face of reduced staffing and he experienced increasing pain in his back. The employee requested a chair with arm support but did not receive one. After reporting an "aggravated disc condition" to his supervisor on April 4, 1986, the employee worked part-

time for the first week of April. He last worked on April 7, 1986. At the time of his testimony before the administrative judge in July, 1994, he had not returned to work and was suffering daily back pain.

The insurer and the employer settled the employee's claim for compensation under G. L. c. 152, § 34A, by a lump sum agreement. G. L. c. 152, § 48. The agreement was approved in March, 1994. In view of the insurer's claim that the Workers' Compensation Trust Fund (trust fund) should reimburse the insurer for its lump sum payment, and the fact that the trust fund was not included in the lump sum negotiations, see G. L. c. 152, § 37, the administrative judge allowed the trust fund to litigate the issue of whether there was a subsequent injury. The reviewing board affirmed this decision and, on this appeal, the insurer does not raise the issue of the trust fund's participation in the case. Other procedural complexities associated with this case are not relevant to the issue before us now.

The administrative judge "adopt[ed] the expert medical opinion of [the employee's treating doctor] . . . that the work . . . the Employee was doing for this year-long period caused his back pain to worsen to such a degree that he was no longer able to work . . . [and] that this work from April of 1985 to April of 1986 was an aggravation of the Employee's underlying degenerative disc disease." The judge also "adopt[ed] the expert vocational opinion of [a vocational rehabilitation consultant who appeared for the insurer] . . . that the job . . . the Employee described . . . doing during the winter of 1986 was a unique job in the occupation of a billing clerk in that he was sitting ninety-five percent of the time in a chair with no arms and suffering from a pre-existing back condition." The administrative judge credited the vocational expert's testimony that "a typical sedentary job in the open labor market would require a person to be in a sitting position forty percent of the work day." On cross-examination, the vocational expert testified that because the employee was working in a public service utility business, he did not have the freedom to walk around that, for example, a receptionist in a law firm would have.

*Governing legal principles.* The section of the workers' compensation law at issue here is G. L. c. 152, § 37. It requires an insurer to pay workers' compensation benefits to a previously impaired employee who suffers a subsequent injury "in the course of and arising out of his employment," if the injury

"results in a disability that is substantially greater by reason of the combined effects of such impairment and subsequent personal injury." *Ibid.* In order to encourage employers to hire or continue to employ impaired workers who may be at greater risk of injury, see *Sliski's Case,* 424 Mass. 126, 133 (1997); *Louis's Case,* 424 Mass. 136, 141-142 (1997), § 37 provides that insurers who make payments under this section "shall be reimbursed [for a certain proportion of the payments made] by the state treasurer from the [workers' compensation] trust fund."

"The determination whether an injury 'arose out of' and 'in the course of' employment is a question of fact to be decided by the [administrative judge] . . . . 'Arising out of' refers to the causal origin, . . . while 'in the course of' refers mainly to the time, place, and circumstances of the injury in relation to the employment." *Larocque's Case,* 31 Mass. App. Ct. 657, 658-659 (1991), citing *Zerofski's Case,* 385 Mass. at 592, and *Corraro's Case,* 380 Mass. 357, 359-361 (1980). An "[i]njury 'arises out of' employment if it is attributable to the 'nature, conditions, obligations or incidents of the employment; in other words, [to] employment looked at in any of its aspects.' " *Zerofski's Case,* 385 Mass. at 592, quoting from *Caswell's Case,* 305 Mass. 500, 502 (1940). However, the question whether an injury arises out of and in the course of employment "involves more than the factual problem of causation. In some cases work may be a contributing cause of injury, but only to the extent that a great many activities pursued in its place would have contributed." *Zerofski's Case,* 385 Mass. at 594. "To be compensable, the harm must arise from a specific incident or series of incidents at work, or from an identifiable condition that is not common and necessary to all or a great many occupations." *Id.* at 594-595. "[J]ob duties involving common movements done frequently by many humans both in and out of work will not be sufficient to establish an entitlement." *Adams* v. *Contributory Retirement Appeal Bd.,* 414 Mass. 360, 366 (1993). ("Personal injury" in determining eligibility for accidental disability retirement is "interpreted similarly" to the same term in the workers' compensation statute. *Id.* at 361 n.1.)

"The line between . . . injury [for which reimbursement is required] and mere 'wear and tear' is a delicate one." *Zerofski's Case,* 385 Mass. at 594. See *Brzozowski's Case,* 328 Mass. 113, 115-116 (1951). See also *Kelly's Case,* 394 Mass. 684, 688 (1985) (distinguishing cases involving gradual wear and tear).

"[T]he distinction is necessary to preserve the basic character of the [workers' compensation] act." *Zerofski's Case*, 385 Mass. at 594. "The 'purpose [of the act] is to treat the cost of personal injuries incidental to . . . employment as a part of the cost of business.' *Madden's Case*, 222 Mass. 487, 494-495 (1916). 'It is not a scheme for health insurance.' *Maggelet's Case*, 228 Mass. 57, 61 (1917)." *Zerofski's Case*, 385 Mass. at 594.

The authority of the reviewing board to reverse a decision of an administrative judge is limited to decisions that are "beyond the scope of [the judge's] authority, arbitrary or capricious, or contrary to law." G. L. c. 152, § 11C, as amended by St. 1991, c. 398, § 31. Our review of the board's action is also limited. See *Scheffler's Case*, 419 Mass. 251, 258 (1994). With these principles in mind, we review the findings of the administrative judge and the conclusions of the reviewing board.

*Findings below.* The administrative judge correctly interpreted *Zerofski's Case* as "stand[ing] for the proposition that, if [the administrative judge] find[s] that no specific event or events caused the Employee's disability but rather that it was a condition of his employment, [he] must find that this particular work condition is unique and not common and necessary to a large number of occupations. Otherwise, the Employee's disability would be the result of ordinary 'wear and tear.' " The administrative judge then went on to find, based on the opinion of the vocational expert, that "the work condition of the Employee who is significantly handicapped, sitting in one position for extended periods of time against the advice of his doctor, doing the work of a decreasing staff, in an ergonomically inappropriate chair, and for over the period of a year, to be a unique work condition . . . go[ing] beyond the concept of the mere wear and tear that can occur in many occupations over an extended period of time."

Having set out the proper test and then focused on findings designed to show that the employee's job was unique, we think the administrative judge implicitly found that there was neither a specific incident nor a series of incidents that caused the employee's injury. See *Zerofksi's Case*, 385 Mass. at 594-595. The parties appear to agree. Even the insurer focuses its appellate argument on the uniqueness of the employee's job rather than the existence of a specific incident.

However, as the reviewing board correctly determined, this analysis is legally flawed. The board determined that,

"[w]hen the judge took into consideration the employee's 'already serious back condition,' he impermissibly wove the employee's pre-existing medical condition into the calculation of the 'uniqueness' of the conditions of employment. What the employee brings to the workplace activity, alleged as a compensable condition of employment, is irrelevant to the analysis of that work condition under *Zerofski's Case.* The doctrine of accepting the employee 'as is,' *Madden's Case*, 222 Mass. 487 (1916), has no import in the assessment of the *nature* of the work activity that allegedly caused the injury. So too, the adopted medical opinion that the prolonged sitting aggravated the employee's back condition is wholly beside the point. . . . It is the work activity *qua* 'identifiable condition that is not common and necessary to all or a great many occupations' that is the sole focus of the analysis as to the occurrence of a work injury, not its effect on the employee." (Emphasis in original).

There is no support in the case law for taking the employee's condition into account in determining whether the "unusualness requirement," *Robinson* v. *Contributory Retirement Appeal Bd.*, 20 Mass. App. Ct. 634, 638 n.3 (1985), has been met. See, e.g., *Adams* v. *Contributory Retirement Appeal Bd.*, 414 Mass. at 361, where the court held that an elementary school teacher, who was born with a club right foot which had been treated and who wore a brace on her left leg as a result of a bout with poliomyelitis when she was a child, did not suffer a "personal injury" as a result of "continual periods of walking and standing and frequent bending over" in her duties monitoring recess. "It is not enough for [an employee] to show that his or her daily duties are unique to the job because all jobs have their own special characteristics." *Id.* at 365. "[J]ob duties involving common movements done frequently by many humans both in and out of work [are] not . . . sufficient to establish [a reimbursable injury]." *Id.* at 366. As the vocational expert acknowledged in cross-examination, there are many jobs in the work force that require extended amounts of sitting. She gave the following examples: receptionist, secretary, judge, bus driver, cab driver, truck driver, lawyer, and stenographer (in that order).

The reviewing board also rejected the administrative judge's finding, made without benefit of expert testimony, that the

absence of a chair with arms caused the employee's injury. There was no error in the reviewing board's conclusion that expert testimony was necessary to support such a finding. See *Sevigny's Case*, 337 Mass. 747, 749 (1958); *Casey's Case*, 348 Mass. 572, 574 (1965).

"In the circumstances of this case, and mindful of our obligation to 'accord deference to an administrative interpretation of a statute,' . . . we affirm the decision of the reviewing board." *Mugford's Case*, 45 Mass. App. Ct. 928, 930 (1998). Compare *Bengtson's Case*, 34 Mass. App. Ct. at 247 ("board's reversal of the judge's award was consistent with its authority under [former] G. L. c. 152, § 11C, and [employee] has presented no valid reason for disturbing the board's exercise of expertise and discretion under G. L. c. 30A, § 14[7]").

Given our holding in this case, we need not reach the issue of whether the insurer is entitled to interest pursuant to G. L. c. 152, § 50, on reimbursements pursuant to G. L. c. 152, § 37. The decision of the reviewing board denying the insurer's claim for reimbursement under § 37 is affirmed.

*So ordered.*